Davis Store Fixtures, Inc., Plaintiff-Appellee, v. The Cadillac Club, Defendant, and Howard Meyers, Intervening Defendant-Appellant.

Gen. No. 64–113.

Second District.

June 3, 1965.

Brown, Connolly, Paddock & Roszkowski, of Rockford (Kenneth F. Ritz, of counsel), for intervening defendant-appellant.

Pedderson, Menzimer & Conde, of Rockford (L. W. Menzimer, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

This case involves conflicting claims to certain tavern equipment. The parties are the conditional vendor of the equipment and a subsequent purchaser of a certificate of sale to the real estate on which the equipment had been installed.

In 1958, Davis Store Fixtures, Inc., hereinafter called Davis, sold the equipment in question to John Head, who owned a building in Rockford. The sale was pursuant to a conditional sales contract, which provided that Davis retain title to the equipment until all of the purchase price had been paid. The equipment consisted of a bar, which was installed in the building by attaching it to the floor with angle brackets and screws about an inch and a quarter in length. Attached to the bar were a four foot refrigerated base, two storage sections, and a three foot bay for a waitress. There was also a bench which was attached to the wall of the building by screws, and a stainless steel drain board. Various portions of this equipment were connected to the plumbing lines and electrical wiring of the building.

No payment was made on the contract after January of 1959. The real estate changed hands several times after that date, and Davis attempted to collect

for the equipment from the various owners, but to no avail.

On January 26, 1963, the Appellant, Howard Meyers, purchased a Master's certificate of sale to the real estate issued in a mortgage foreclosure proceeding. It is undisputed that Meyers knew nothing of the interest of Davis under the conditional sales contract. Prior to his purchase of the certificate, he retained an attorney, who "made an investigation," the nature of which is not disclosed by the record, and did not find any indication of Davis' interest in the equipment.

On November 22, 1963, ten months after Meyers' purchase of the certificate, Davis filed a replevin action against a private club being operated on the premises known as the Cadillac Club. A writ was issued, and the equipment was removed from the premises. It appears that three men worked about two hours removing the equipment. The screws were removed, and at least one of the plumbing connections had to be sawed through. Although Meyers argues that the length of time involved in removing the equipment is evidence of its solid union with the real estate, the view of the evidence most favorable to Davis, the appellee, is that the major part of the time was spent simply in lifting and moving this heavy equipment. The only marks on the floor or wall of the building after removal of the equipment were the holes where the screws had been.

When Meyers learned of the removal of the equipment, he intervened in the action and filed a counterclaim against Davis, alleging that the items of equipment were fixtures which had passed to him with the real estate. The trial court found in favor of Davis, and Meyers brings this appeal.

Meyers advances two arguments. First, he says that, where the goods are so affixed to the realty as to become fixtures, the conditional vendor's reserva-

tion of title is not good as against a bona fide purchaser of the realty who has no notice of the conditional sales contract. Secondly, Meyers contends that by virtue of its long delay in repossessing the equipment after default in payment, Davis is estopped from claiming the equipment as against Meyers.

■ Addressing ourselves first to the question of whether the goods became fixtures by reason of their installation in the building, we are inclined to agree with Meyers that, where the goods become an integral part of the building, and cannot be removed without material injury to the building, the title of the conditional vendor would not be good as against a bona fide purchaser of the real estate without notice of the conditional sale. See, e. g. the cases cited at 141 ALR 1283, 1292, 1293, 111 ALR 362, 382, 383; 88 ALR 1318, 1337. See also 19 ILP Fixtures, sec 8, p 476. The initial question here, then, is whether the tavern equipment was so clearly an integral part of the building as to override the reservation of title in the conditional sales contract. Both parties cite cases on this point, and we are impressed with the difficulty one has in trying to reconcile them. Decisions may be found to support each side of the argument, and we do not think it would be helpful to discuss all of the pertinent cases here.

Many of the cases in this area have arisen in states where the Uniform Conditional Sales Act is in effect. Section 7 of that Act provides a method whereby the conditional vendor may protect his interest as against a subsequent purchaser of the real estate by recording the contract and a detailed description of the nature and location of the goods. This Section further provides, however, that "if the goods are so affixed to the realty at the time of the conditional sale or subsequently as to become a part thereof and not to be severable wholly or in any portion without material

injury to the freehold, the reservation of property as to any portion not so severable shall be void after the goods are so affixed as against any person who has not expressly assented to the reservation." The protection afforded by the recording procedure applies only to goods which are "so affixed to realty at the time of a conditional sale or subsequently as to become a part thereof but to be severable without material injury to the freehold. . ." 2 Uniform Laws Ann p 12. Many of the cases arising under the Act have turned on the question of whether there has been a proper recording, or, if proper recording is conceded, the further question of whether the goods are so affixed to the real estate as to render the recording ineffectual as against a subsequent purchaser of the realty. See 13 ALR 448; 73 ALR 748; 88 ALR 1318; 111 ALR 362; 141 ALR 1283.

■ Whether the goods are so affixed to the realty as to constitute them an essential part thereof, and to prevent their removal without material injury to the realty is, in each instance, a mixed question of law and fact. To the extent that the question is one of fact, there is frequently room for difference of opinion. See, for example, the variety of results reached on apparently comparable facts in the cases discussed in the annotations cited immediately above. In the instant case, the trial court found that the bar equipment did not become part of the real estate, and, on the facts presented to us, we are unable to hold that this finding is against the manifest weight of the evidence. The fact that screws had to be removed and a plumbing line cut is not necessarily material injury to the freehold.

Meyers' next point is that Davis should be estopped by its conduct in waiting for three years after default before asserting its claim to the equipment. Meyers

110

also makes a point of the fact that the conditional sales contract was not recorded by Davis.

As we have noted earlier, it was agreed that Meyers had no notice of the conditional sales contract. From the record there appears no doubt that he was in fact misled into believing that the bar equipment was part of the building. To what extent his misconception may have been due to his failure to make full inquiry is not clear from the record, because the exact nature of the inquiries made on his behalf are not detailed.

■ ■ We do not believe that the failure of Davis to repossess the equipment within a reasonable time after default can be held to work an estoppel in this case. One of the requirements for an estoppel is reliance by the aggrieved party upon some act or omission of the party against whom the doctrine of estoppel is asserted. The evidence in this case does not show that Meyers relied upon anything Davis did or did not do. Rather, Meyers relied simply upon the fact that the equipment was there. The fact that Head was in default is not what caused the problem. Meyers could just as easily have been misled had he purchased the building at a time when the contract was not in default. Assume, for instance, that when Meyers bought the building the equipment had not been fully paid for, but the payments were current, and Davis had no grounds for repossession. Under these circumstances, Meyers would still have been unaware of Davis' title to the goods. If we were to hold that Davis' delay in repossessing the property, of itself, creates an estoppel, then, by logic we think inescapable, we would have to hold that the rights of *every* conditional vendor are cut off by sale of the realty to a purchaser without notice. This is a change in the law we do not feel authorized to announce. We do not

111

say that there may not be conduct by the vendor or even inaction by the vendor, which might mislead the purchaser of the realty and create an estoppel. What we are saying is that a mere failure to repossess the property after default, without more, cannot be held to result in an estoppel.

Meyers is correct in pointing out that the problem in this case might have been avoided had the conditional sales contract been recorded. Unfortunately, however, there was no statutory provision requiring the recording of a conditional sales contract in Illinois at the time of this transaction, and Meyers does not argue otherwise. There being no provision for it, we think that, even if such a contract had been recorded, the recording would not have constituted constructive notice to third parties. See 32 ILP Sales, sec 275, p 564.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

ABRAHAMSON, P. J., and DAVIS, J., concur.