**Thomas T. GEORGE, Trustee, Petitioner-Appellant,**

v.

**COMMERCIAL CREDIT CORP., Respondent-Appellee.**

**No. 18330.**

United States Court of Appeals, Seventh Circuit.

April 6, 1971.

Thomas T. George, Madison, Wis., for petitioner-appellant.

Ralph K. Rosenbaum, Jr., Milwaukee, Wis., for respondent-appellee.

Before DUFFY, Senior Circuit Judge, FAIRCHILD, Circuit Judge, and CAMPBELL, United States Senior District Judge.[1]

DUFFY, Senior Circuit Judge.

This is an appeal from an order of the District Court affirming the decision of a Referee in Bankruptcy and sustaining a secured creditor's interest in a mobile home.

The question before us for decision is whether appellee's real estate mortgage on his mobile home may prevail against the trustee's claimed interest.

The referee and the District Court upheld the appellee's claim finding that the mobile home had become a fixture under Wisconsin law. The trustee argues that the mobile home was not a fixture, in fact, and secondly, that the law of fixtures does not apply to security interests in mobile homes.

Dale Wallace Foskett [2] owned five acres of land in Jefferson County, Wisconsin. On December 6, 1968, he purchased a Marshfield Mobile Home, No. 9090, from Highway Mobile Home Sales, Inc. He signed an installment contract and paid $880 on the purchase price of $8,800. Added was a sales tax and interest covering a ten-year period.

Sometime in December 1968, Foskett executed a real estate mortgage to Highway Mobile Home Sales, Inc. The mort-

---

1. Judge Campbell sitting by designation.

2. Foskett filed a petition in bankruptcy on June 28, 1969, and he will, at times, be referred to herein as the "bankrupt" without regard to the date when his bankruptcy petition was filed.

gage recites the sum of $14,227.70 and described the real estate in metes and bounds. The mortgage was assigned to Commercial Credit Corporation, the respondent-appellee herein.

The mobile home here in question could not move under its own power. It was delivered to Foskett's real estate property by Mobile Sales. This mobile home was never again operated on or over the highways as a motor vehicle.

The mobile home here in question was 68 feet in length, 14 feet in width and 12 feet in height. It contained six rooms and weighed 15,000 pounds.

The bankrupt owned no other home and he and his wife occupied the mobile home continuously from December 6, 1968 until forced to vacate same by order of the Trustee in Bankruptcy.

The home was set on cement cinder blocks three courses high. It was connected with a well. It was hooked up to a septic tank. It also was connected with electric power lines.

The bankrupt never applied for a certificate of title from the Wisconsin Motor Vehicle Department. However, he did apply for a homeowner's insurance policy and he asked the seller to remove the wheels from his home. He also applied for a building permit and was told he had to construct a permanent foundation for the home. The permit was granted upon condition that the foundation be constructed within one year. However, within that period, the petition for bankruptcy was filed.

The issue before us can be thus stated: Commercial Credit Corporation argues that the mobile home was a fixture under applicable law and is not personalty. The trustee insists that the mobile home was and still is a "motor vehicle" and is personalty.

The mobile homes industry has grown rapidly in the last few years. There has been a great demand for relatively inexpensive housing by middle income families. In Wisconsin, a distinction is now recognized between mobile homes (those used as homes) and motor homes (those often used as vehicles).[3]

In the recent case of Beaulieu v. Minnehoma Insurance Company, 44 Wis.2d 437, 171 N.W.2d 348 (1969), the Wisconsin Supreme Court pointed out the unique character of mobile homes: "As indicated by the plaintiff, a mobile home has a dual nature. It is designed as a house; yet, unlike a house, it is also capable of being easily transported. In the instant case, it was employed solely as an economical means of housing. It was never moved, nor was moving contemplated at the time the insurance coverage was procured." (44 Wis.2d at 439, 171 N.W.2d at 349).

We look to state law to determine the applicable standards for determining when personalty becomes affixed to real property.

The Wisconsin law on the question is found in Auto Acceptance and Loan Corp. v. Kelm, 18 Wis.2d 178, 118 N.W.2d 175 (1962) where the Wisconsin Supreme Court reaffirmed its decision in Standard Oil Co. v. LaCrosse Super Auto Service, Inc., 217 Wis. 237, 258 N.W. 791 (1935). That case held that the three tests for determining whether facilities remain personalty or are to be considered part of the realty are 1) actual physical annexation to the realty; 2) application or adaptation to the use or purpose to which the realty is devoted, and 3) intention of the person making annexation to make a permanent accession to the freehold.

In the *Standard Oil Company* case, *supra*, the Court pointed out that "physical annexation" is relatively unimportant and "intention" of the parties is the principal consideration.

In Premonstratensian Fathers v. Badger Mutual Insurance Co., 46 Wis.2d 362, at p. 367, 175 N.W.2d 237, at p. 240 (1970), the Court reaffirmed its adherence to the three-fold test saying, "It is the application of these tests to

3. Wis.Stats. Chap. 340.01 (29), (33m), 341.25(1) (j), Laws 1969, Chap. 464.

the facts of a particular case which will lead to a determination of whether or not an article, otherwise considered personal property, constitutes a common-law fixture, and hence takes on the nature of real property."

■ Viewed in light of these Wisconsin tests, the finding of the referee and the District Court that this mobile home had become a fixture must clearly stand. The bankrupt's actual intention pointed definitely toward affixing the mobile home to the land as a permanent residence, as seen in his application for a building permit (which, by law, required him to erect a concrete slab as a permanent foundation within one year), his purchase of a homeowner's insurance policy, and his requests made to the seller to have the wheels of the home removed. Moreover, the home was clearly adapted to use as the permanent residence of the bankrupt and was never moved off of his five-acre plot.

The fact that it may have been physically possible for this mobile home to have been more securely attached to the ground should not alter our position. Physical attachment did occur by means of cinder blocks and a "C" clamp, while connections for electricity, sewage and natural gas were provided as well. Finally, we note that the very size and difficulty in transporting this mobile home further highlight the fact that this was a vehicle which was intended primarily to be placed in one position for a long period of time and to be used as an intended permanent home.

■ The trustee also errs when he asserts that the effect of the Wisconsin Motor Vehicle Code (Wis.Stats. Chaps. 340–349) is to foreclose the possibility of a mobile home ever becoming a fixture. The trustee points principally to

Section 342.24, which states in relevant part: "The method provided in this chapter of perfecting and giving notice of security interests subject to this chapter is exclusive. * * * " Rather than accepting a restrictive interpretation of the Motor Vehicle Code, we feel that the quoted provision, along with the other sections dealing with registration and perfection of security interests [4] do not apply to a mobile home, once it has become a fixture.

In this connection, it is clear that Section 342.24 is more concerned with potential conflict with the Commercial Code when it speaks of exclusive perfection, than with the real estate laws. Likewise, within the Motor Vehicle Code itself, there are specific exemptions from registration for certain types of vehicles which are only limitedly used upon the highways. This mobile home, for example, would have been exempt from registration while being transported from the dealer to the bankrupt's property. (Wis.Stat. Sec. 341.47).

Our reading of the Wisconsin Statutes is thus consistent with other statutory and common law provisions dealing with the fixture situation, such as Section 9–313 of the Uniform Commercial Code (Wis.Stats. Sec. 409.313) which takes care to state that the Code does *not* prevent creation of encumbrances upon fixtures or real estate pursuant to the law applicable to real estate. (See also 4A Collier on Bankruptcy, ¶ 70.20 pp. 283–295).

In view of our holding that this particular mobile home had become a fixture under Wisconsin law and that the law of fixtures may, by law, be applied to mobile homes in that State, the Judgment of the District Court must be and is

Affirmed.

---

4. See Sections 341.04, 341.05, 341.47, 342.05, 342.19.