GEORGE D. BORROWMAN et al., Plaintiffs-Appellees, v. VIRGIL HOWLAND, Defendant-Appellant.

Fourth District   No. 4—83—0201

Opinion filed November 21, 1983.

Schimmel, Takahashi & Schimmel, of Pittsfield, for appellant.

496

Brett Irving, of Irving & Irving, of Pittsfield, for appellees.

JUSTICE TRAPP delivered the opinion of the court:

This is an action brought by the commissioners of the Sny Island Levee Drainage District (drainage district) in Calhoun County seeking a mandatory injunction to compel the removal of a farm building which allegedly encroaches upon a drainage district easement. Virgil Howland is the contract purchaser of the land on which the building is located, and he erected the building in issue. On January 21, 1983, an order of mandatory injunction issued, directing defendant to remove the structure from the drainage district's easement within six months. Defendant appeals.

Howland disputes the validity of the injunctive order on several theories. First, he asserts that the trial court was without jurisdiction over all necessary parties, because the owners of the land upon which the structure was located were not made parties to the action. Second, defendant contends that the presence of the structure on the land subject to the easement did not constitute an encroachment, since the building did not interfere with the uses for which the easement was created. Third, he argues that the issuance of the mandatory injunction was improper because the plaintiffs would have an adequate remedy at law. Last, Howland maintains that the trial court abused its discretion in issuing the mandatory injunction, because the foreseeable benefits of removing the structure would be greatly outweighed by the cost of its removal.

The complaint alleged that the title owners of the land in question granted an easement to the drainage district on May 24, 1967, and this conveyance was recorded with the Calhoun County recorder on January 29, 1969. It also alleged that Virgil Howland knowingly encroached on this easement beginning in the spring of 1980 when he caused a pole structure to be erected on the land subject to the right-of-way. Attached to the complaint was a copy of the instrument which purportedly created the easement in issue. According to this document the grantors of the easement were Una B. Suhling, Kermit Suhling, Jeanette Suhling, William Haynes and Dorothy Haynes (Suhlings and Hayneses), who apparently are the current titleowners of the land. The area subject to the easement is described as "[a] tract of land 150.0 feet in width being 75.0 feet on each side of the centerline of an existing drainage ditch locally known as 'Old Bay Creek Channel.' " The document conveys to the drainage district "the perpetual right to use, operate, repair, and maintain the existing channel with the right to place spoil within the area," and "the perpetual right of

ingress and egress over the [area covered by the easement] for the purpose of inspection, patrolling, repairing, using, operating, excavating, placing spoil and maintaining said existing ditch." Reserved to the grantors in the right to "use the area *** for ordinary farming operations or any other purpose, so long as said usage does not obstruct, damage, or affect the efficiency of the operation or maintenance of said drainage ditch." This agreement was signed by all five grantors and the three drainage district commissioners and provides that it shall be binding upon the successors, heirs, devisees and assigns of the respective parties.

Trial commenced on November 12, 1982. Although Howland did not formally admit any of the allegations of the complaint, certain basic facts were not disputed in the evidence or arguments presented at trial. First, there is no dispute as to the existence of the drainage district's easement nor the validity of the instrument which describes and created the easement. Second, there is no dispute that the building in issue is located on the area covered by the easement. Third, it is uncontroverted that Howland is the contract purchaser of the land, and that the Suhlings and Hayneses hold legal title.

The principal witness for the plaintiffs was the superintendent of the drainage district, William T. Gard. Gard testified that he spoke with defendant around the first of March 1980, and defendant asked him about a "clean out" of Old Bay Creek and Crooked Slue Ditch. During that conversation, Howland requested materials relating to drainage district easements on the land he occupied. Gard recalled that defendant did not state the reasons for this request and defendant made no mention of any construction plans. Gard testified that he gave Howland several documents, including a copy of the document creating the easement in issue.

Gard stated that Howland attended the April 1, 1980, meeting of the drainage district board of commissioners and again inquired into a "clean out" of local channels. Defendant reportedly indicated that he was building a structure on the land he occupied, but he stated it was "some distance away" from Old Bay Creek. That same day Gard and the commissioners visited defendant's farm to investigate. Gard testified that the structure was near completion. It measured approximately 60 feet by 25 feet and was located seven feet from the bank of the channel. By Gard's estimation, the edge of the building measured 38 feet from the center line of the channel and 68 feet from the opposite bank.

Gard testified that in order for the drainage district to maintain the channel it was necessary to bring machinery in adjacent to the

bank of the channel. Normally, cleaning operations were undertaken with a bulldozer and a "dragline." He stated that Howland's building would prohibit the operation of such machinery at that location on the bank. Gard stated that the drainage district planned to clean out this particular section of the channel in the "near future." He conceded that the right-of-way had not been used in recent years and that the last time the channel was cleared was in 1967.

In addition to Gard, each of the three individual plaintiffs testified. Their testimony corroborated Gard's account of the events on April 1, 1980. They agreed that Howland's shed was within 10 feet of the creek bank. After viewing the obstruction, the commissioners sent Howland written notice on April 2, 1980, demanding removal of the structure within 10 days. Commissioner John Kinscherff testified specifically about the anticipated difficulties of cleaning the ditch at the location of Howland's structure. He stated that the channel is approximately 50 to 60 feet wide at that point. He indicated that the creek could not be cleared from the opposite bank, because the drainage district's equipment would not stretch across the entire span of the channel.

Virgil Howland testified that he did not hold the deed to the land, but was purchasing the real property from the Suhlings and Hayneses on contract. He stated that he spoke to Gard about drainage district easements on the land in early 1980, before construction began on the building in issue. He recalled that he specifically asked Gard about the measure of the easement adjacent to Old Bay Creek. Gard's reply, according to Howland, was to the effect that it would take a long time to find the answer in the drainage district's voluminous records; yet, Gard volunteered, "I'd say approximately 75 feet." Howland testified that Gard gave him no documents relating to the easement.

Howland stated that he used Gard's estimate when he chose the building site. He testified that he measured 80 feet across the channel and placed a marker. The structure was then built on the far side of the marker. Defendant stated that the building measures 60 feet by 30 feet, with the length of the building lying parallel to the channel. He conceded that it would not be possible to operate a bulldozer behind the shed; however, he suggested there would be no need for such machinery since he had cleared the area prior to construction.

Defendant testified that he knew the drainage district had an easement when he began construction, but he did not know the true dimensions of the easement until the drainage district gave notice of the alleged encroachment. When he obtained the documents detailing the easement, he received them from the county recorder and not

from Gard. He further testified that Gard told him the easement measured 75 feet in width rather than 75 feet from the center line of the channel. Howland testified that he had never done a title search on the land, because the vendors promised to deliver a guaranteed title.

In a written order entered on January 21, 1983, Judge Pezman found that Howland's building constituted a serious encroachment on the easement, and that Howland knew or should have known the correct dimensions of the easement. The court issued an order of mandatory injunction directing defendant to remove the offending structure within six months. This appeal followed.

Howland argues first that the judgment is a nullity, because the trial court lacked jurisdiction over all necessary parties. Specifically, he contends that the Suhlings and Hayneses were indispensable parties because they owned the land in question. He reasons that a building when attached to real property becomes part of the real property, and since the Suhlings and Hayneses hold legal title to the land, their legal interests were unavoidably involved in this action for mandatory injunction.

■■ ■ We do not agree that the Suhlings and Hayneses were indispensable parties. The general rule in equity was that all persons should be made parties who are legally or beneficially interested in the subject matter of the litigation and who would be affected by the decree. (*Georgeoff v. Spencer* (1948), 400 Ill. 300, 79 N.E.2d 596; *Oglesby v. Springfield Marine Bank* (1944), 385 Ill. 414, 52 N.E.2d 1000. See also Ill. Rev. Stat. 1981, ch. 110, par. 2—406(a).) Moreover, the interest of a necessary party is one which is present and substantial rather than a mere expectancy or future contingency. *Stavros v. Karkomi* (1976), 39 Ill. App. 3d 113, 349 N.E.2d 599; *McDonald's Corp. v. Smargon* (1975), 31 Ill. App. 3d 493, 334 N.E.2d 385.

■■ Howland's argument assumes that the structure was a fixture on the land and that the Suhlings and Hayneses had a present interest in the building. Neither assumption has any basis in the evidence. What constitutes a fixture depends on the facts and circumstances of a case and in large part upon the relationship, agreement, and intent of the parties. (*Hopwood v. Green* (1940), 375 Ill. 167, 30 N.E.2d 656; *Landfield Finance Co. v. Feinerman* (1972), 3 Ill. App. 3d 487, 279 N.E.2d 30.) The record in this case contains no evidence relating to the agreement between defendant and the Suhlings and Hayneses, nor of the intent of those persons in regard to any structures erected on the land. This void in the record is surely due to the fact that Howland did not raise this issue until after the close of all the evidence.

■■ ■ Even if we assume that the Suhlings and Hayneses had a present and substantial interest in the structure, the failure to join those persons as parties to the action would not require reversal. An exception to the general joinder requirement provides that where necessary parties who are not joined share the same interests as some party appearing before the court, and the party appearing before the court is able to protect the interests of those absent, the failure to join parties is not fatal. (*Pioneer Processing, Inc. v. Environmental Protection Agency* (1982), 111 Ill. App. 3d 414, 444 N.E.2d 211.) This exception would have proper application in the case at bar. Whatever the precise nature of the Suhlings' and Hayneses' interest in the structure, their purpose in the litigation would surely be the same as defendant's purpose: to preserve the structure. If in fact the Suhlings and Hayneses had an interest in the structure, they, as Howland, would have opposed the issuance of the mandatory injunction. Hence, on the basis of the exception of the general joinder rule, the failure to join the titleowners of the land was not fatal.

Second, defendant contends that the construction of the building on the land subject to the easement did not encroach on the easement, because it did not deprive the plaintiffs of the uses for which the easement was created. The instrument creating the easement grants to the plaintiffs "the perpetual right to use, operate, repair, and maintain the existing channel with the right to place spoil within the area" and "the perpetual right of ingress and egress over the [area covered by the easement] for the purposes of inspection, patrolling, repairing, using, operating, excavating, placing spoil and maintaining said existing ditch." The document further provides that the occupier of the land is prohibited from using the land in any manner to obstruct, damage or affect the efficiency of the operations of the drainage district.

Howland suggests that the building causes no interference because he cleared the area in 1980 and there was no showing that the drainage district actually attempted to work on this section of the channel. This ignores the fact that the easement is of perpetual duration. It also ignores the uncontradicted testimony of William Gard that the plaintiffs planned to clear the area adjacent to the structure in the near future. Defendant also notes that the structure does not impede the flow of water in the channel. While it is true that there is no evidence to suggest that the building directly interferes with the flow of water in the channel, Gard testified without contradiction that the flow would become obstructed if the plaintiffs remained unable to clear this section of the channel. Moreover, the use permitted by the

easement is not limited to the flow of water through the channel, but also includes the right of drainage district personnel to enter the area and perform cleaning operations.

■ Defendant also hypothesizes that the work of the drainage district could be accomplished notwithstanding the presence of the building. Specifically, he suggests that cleaning operations could be conducted from either side of the structure or from the opposite bank. This theory finds no support in the record. It is uncontradicted that heavy machinery could not operate behind the shed and there was no evidence to suggest that the work could be done from a position beside the building. It is to be recalled that the structure measures 60 feet in length and lies six to 10 feet from the creek bank. The uncontradicted evidence also showed that the plaintiffs had no equipment which was capable of reaching across the channel. Howland's contention that the building would not interfere with the functions of the plaintiffs is plainly refuted by the record.

■ ■ Third, defendant argues that the trial court erred in granting the injunction because the plaintiffs would have an adequate remedy at law. He contends that the inconvenience caused by the presence of the structure could be measured monetarily and damages could be awarded accordingly. This approach suffers two fundamental defects. It assumes that the continued presence of the structure would merely impose some inconvenience upon the plaintiffs which could be compensated in damages. To the contrary, the evidence indicated, and plaintiffs alleged, that the presence of the structure would render proper maintenance of the channel impossible. Further, this approach ignores the perpetual nature of the easement. Even if the presence of the structure merely made the plaintiffs' task more difficult, the legal remedy would require that the plaintiffs return repeatedly to court to prove their damages. In the sense relevant here, an adequate remedy at law would be one which is clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy. (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223; *Cross Wood Products, Inc. v. Suter* (1981), 97 Ill. App. 3d 282, 422 N.E.2d 953.) Under the circumstances it is clear that the legal remedy would not be complete, hence the availability of damages would not preclude the issuance of an injunction.

■ Last, defendant asserts that the trial court abused its discretion in ordering the injunction, because the foreseeable benefits of removing the structure would be greatly outweighed by the costs. The evidentiary basis on this question is largely one-sided. Defendant pro-

duced no proof of the cost of removing or replacing the building. Moreover, there is no contention that reconstruction of the structure at a different site on the land would be impossible. On the other hand, the plaintiffs presented substantial evidence as to the hardship which maintenance of the easement would entail. In short, the record does not permit a conclusion that the trial court erred in weighing the competing interests.

Howland contends that his construction of the building on the area subject to the easement was innocent, but the evidence suggests otherwise. Defendant is the contract purchaser of the land and is chargeable with knowledge of whatever is shown in the record of the chain of title. (See *Smith v. Grubb* (1949), 402 Ill. 451, 84 N.E.2d 421; *Clark v. Leavitt* (1929), 335 Ill. 184, 166 N.E. 538.) It is undisputed that the easement is properly recorded; therefore, defendant had at least constructive knowledge of its existence and scope. Howland testified that he was aware that an easement existed before he began construction, yet his only effort to determine the precise scope of the right-of-way was a verbal inquiry to Superintendent Gard. Gard's response purported to be no more than an estimate, and it was clearly indicated to defendant that the estimate was not based upon an examination of the record. The evidence was conflicting as to whether defendant was given a copy of the document which created the easement, but if not, Howland was nevertheless put on notice that further investigation of the easement was required. Defendant admitted in his testimony that he did not even do a title search on the land. When an encroachment is intentional or culpably negligent, the court may properly refuse to balance the equities. See *Ariola v. Nigro* (1959), 16 Ill. 2d 46, 156 N.E.2d 536; *Malchow v. Tiarks* (1970), 122 Ill. App. 2d 304, 258 N.E.2d 811.

Upon this review of the record and authorities, we find no error. We therefore affirm the judgment of the trial court.

Affirmed.

WEBBER, P.J., and GREEN, J., concur.