**In re Jeffrey Todd CASPER, Debtor.**

**Barrett ROCHMAN, Plaintiff,**

**v.**

**CAPE MERCANTILE BANK & TRUST CO., et al., Defendants.**

**Bankruptcy No. BK 91–41241.**
**Adv. No. 92–4172.**

United States Bankruptcy Court,
S.D. Illinois.

July 20, 1993.

Keith Kibler, Marion, IL, for plaintiff.

Jeffrey Hine, Cape Girardeau, MO, for defendants.

Alice Treumann, Clayton, MO, for debtor.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

At issue in this case is whether a mobile home placed on the debtor's real estate after it was sold for taxes became part of the real estate conveyed to the tax purchaser. A secured creditor who financed the debtor's purchase of the mobile home, contends that the tax purchaser gained no interest in the mobile home because it was personal property and was not on the debtor's real estate at the time of the tax sale. The tax purchaser, who subsequently agreed to sell the mobile home back to the debtor, maintains that he acquired the mobile home as part of the real estate conveyed by the tax deed and that he, rather

than the secured creditor, is entitled to payment for his interest through the debtor's Chapter 13 plan.

The stipulated facts are as follows: On January 9, 1989, real estate owned by the debtor, Jeffrey Casper, in Pulaski County, Illinois, was sold for delinquent 1987 taxes to the plaintiff, Barrett Rochman. A certificate of purchase was issued to Rochman.[1] At the time of the sale, a mobile home was located on the property and was used as the debtor's residence.

On June 19, 1989, the debtor purchased the mobile home here at issue, a 1989 Clayton Candlewood measuring 60' × 14', and placed it on his property as a replacement of the mobile home previously used by the debtor. The debtor's retail installment contract on this mobile home was assigned to defendant, Cape Mercantile Bank & Trust Co. ("Bank"), and a certificate of title was issued to the debtor with the Bank's lien noted on the title.[2]

The debtor removed the wheels from the mobile home and had it underpinned on concrete blocks.[3] The assessor's office substituted the new mobile home for the former one on its records and assessed the mobile home as an improvement to the debtor's real estate subject to the tax certificate.

On August 22, 1991, Rochman filed a notice with the circuit clerk of Pulaski County that the property had been sold for taxes. Notice was sent to the debtor and to the Bank, but neither party redeemed from the tax sale. Rochman then filed a petition for issuance of a tax deed on the debtor's real estate. Both the debtor and the Bank were served as defendants in that action, but neither appeared.

On January 22, 1992, the circuit court of Pulaski County ordered the issuance of a tax deed conveying the real estate to Rochman. The court found that all taxes on the property had been paid, and there is no dispute that Rochman paid the taxes coming due in 1989 and 1990. Rochman received the tax deed on January 24, 1992, and recorded it in Pulaski County.

Meanwhile, the debtor commenced his Chapter 13 bankruptcy proceeding on September 17, 1991. After issuance of the tax deed to Rochman, the debtor agreed to repurchase the mobile home from Rochman as a secured creditor under his Chapter 13 plan. Rochman and the Bank each filed claims in the debtor's bankruptcy proceeding that were allowed as secured by the debtor's mobile home.[4] Following the trustee's motion for clarification of the proper distribution of Chapter 13 payments, Rochman brought this adversary proceeding to determine the validity of the Bank's lien on the mobile home, and both matters are presently before the Court for disposition.[5]

1. The tax certificate described the real estate as "Lot 7, Block 4 in Defiance Box Company's Addition to the Village of Ullin, Pulaski County, Illinois. Parcel Index Number 01–26–104–003."

2. The Bank did not have a lien on the first mobile home, and there is no indication what became of it after the present mobile home was purchased.

3. "Underpinning" a structure involves building a support or foundation from below, as with props, girders, or masonry. See Webster's II New Riverside University Dictionary 1258 (1988).

4. Rochman's proof of claim refers to the tax deed as the basis for his secured claim. While the tax deed would not of itself create a "debt" or "claim" to be paid in the debtor's Chapter 13 proceeding, debtor's counsel represents that "subsequent to the change in ownership [by reason of the tax deed], debtor entered into an agreement with [Rochman] to redeem [sic] the property through the Chapter 13 for $15,000 secured." Debtor's Motion to Approve Filing of Late Answer to Complaint, ¶ 3, filed February 17, 1993 (Adv. 92–4172, Doc. # 7). Thus, Rochman's claim is based on this agreement with the debtor and was filed and allowed pursuant to 11 U.S.C. § 1305(a)(2), which provides for payment of postpetition claims in a Chapter 13 proceeding.

5. The trustee takes no position concerning the parties' respective interests in the mobile home but merely seeks a determination of how their claims should be paid under the plan. Thus, the Court's resolution of the adversary proceeding will also decide the trustee's motion. Because this matter involves the resolution of claims against the estate and the proper adjustment of debtor-creditor relationships, it constitutes a core proceeding over which the Court has jurisdiction under 28 U.S.C. § 157(b)(2)(B), (K), and (O).

Rochman asserts that under Illinois law, a tax lien is superior to all other liens on the real estate regardless of when or how they were acquired. He contends that the Bank's lien was rendered void upon issuance of the tax deed and that he became entitled to the mobile home as part of the real estate free and clear of the Bank's lien. The Bank, while not disputing the primacy of Rochman's title to the land itself, insists that the mobile home never became part of the real estate conveyed by the tax deed but remained personal property subject to the Bank's lien. The Bank contends additionally that the tax lien could not have attached to the mobile home in question because it was not on the debtor's property in January 1989 and thus was not included in the property sold for taxes.

The unique facts of this case make it one of first impression under applicable state law governing the effect of Illinois tax deeds, as the Court is aware of no other case in which it was contended that a real estate improvement made after a tax sale but prior to issuance of the tax deed was conveyed along with the real estate to the tax purchaser. The case of *Pappmeier v. Green Tree Acceptance, Inc.*, 193 Ill. App.3d 824, 140 Ill.Dec. 689, 550 N.E.2d 574 (1990), relied upon by Rochman, is strikingly similar to the present case. The *Pappmeier* court found that a mobile home located on property sold for taxes was conveyed by a subsequent tax deed in derogation of the secured lender's lien, which was perfected by notation on the mobile home's certificate of title. However, *Pappmeier* is factually distinguishable from this case in that the mobile home in *Pappmeier* was on the property both at the time the delinquent taxes accrued and at the time the property was sold for taxes. The evidence in *Pappmeier* showed that the mobile home was a permanent structure or fixture on the real estate, and the court ruled that the tax purchaser's lien attached to it as such. *Id.* 140 Ill.Dec. at 690, 550 N.E.2d at 575. Upon issuance of the tax deed, then,

the purchaser in *Pappmeier* became entitled to the mobile home free of the secured lender's lien. *Id.* at 690–91, 550 N.E.2d at 575–76.

In determining whether the *Pappmeier* result applies to the facts of this case, the Court must consider, first, whether the tax deed issued to Rochman included a lien of taxes on the mobile home even though it was placed on the property after the tax sale and, second, whether the mobile home became so affixed to the debtor's property that it was part of the real estate sold for taxes. These issues are necessarily interrelated because a tax lien would attach to the mobile home only if it were real estate and not personal property. Thus, the Court must examine not only Illinois statutory provisions governing tax sales but also common law rules relating to fixtures to determine whether the mobile home became real estate subject to Rochman's tax deed.

## I.

■ Section 216 of the Illinois Revenue Act provides that "the taxes upon real property ... shall be a prior and first lien on such real property, superior to all other liens and encumbrances, from and including the first day of January in the year in which the taxes are levied until the same are paid or until the real property is sold pursuant to this Act...." 35 ILCS 205/216 (1992 State Bar Edition). Under this provision, unpaid real estate taxes are a lien against property on which they have been assessed. When the property is later sold at a tax sale, the lien is extinguished and the purchaser receives a certificate of purchase describing the property. *See* 35 ILCS 205/248.[6]

■ Issuance of the certificate of purchase does not affect title to the property, which remains in the owner. *See Matter of Application of Cook County Treasurer*, 185 Ill.App.3d 701, 703, 134 Ill.Dec. 15, 16,

---

**6.** The successful bidder at a tax sale is the person "offering to pay the amount due on each tract or lot for the least percentage thereon as a penalty." 35 ILCS 205/245. Because the purchaser pays the full amount of the taxes plus interest and costs, the tax lien is discharged as satisfied.

542 N.E.2d 15, 16 (1989). Rather, the tax sale certificate gives the tax purchaser the right to be paid the price of the sale if there is a redemption. *City of Chicago v. City Realty Exchange, Inc.*, 127 Ill.App.2d 185, 262 N.E.2d 230, 233 (1970). This right is a charge upon the property for payment of the debt represented by the taxes and, thus, constitutes a lien on the property in favor of the tax purchaser. *Id.; see Application of Cook County Treasurer*, 185 Ill. App.3d at 703, 134 Ill.Dec. at 16, 542 N.E.2d at 16. The tax purchaser may enforce such tax certificate lien by instituting tax deed proceedings after the time for redemption from the tax sale has expired. *See* 35 ILCS 205/253, 266; *Application of Cook County Treasurer*.

 Before obtaining a tax deed, however, the tax purchaser must ensure that subsequent taxes—those accruing on the property during the two year redemption period—have been paid. *See* 35 ILCS 205/266; *Bouhl v. Gross*, 133 Ill.App.3d 6, 88 Ill.Dec. 305, 310, 478 N.E.2d 620, 625 (1985). When the tax purchaser pays the subsequent taxes, he acquires a further charge upon the property that must be reimbursed by the property owner upon redemption if the tax purchaser files a receipt of such payment with the county clerk. *See* 35 ILCS 205/253; *Bouhl v. Gross*.[7]

 In the present case, the parties do not indicate whether Rochman filed a receipt with the clerk of his payment of taxes following the tax sale. However, it is clear that Rochman paid the taxes that accrued on the real estate after the time it was improved by the mobile home here at issue. By paying the intervening taxes, Rochman gained the right to receive a tax deed to the property, and the tax deed conveyed the debtor's real estate along with any improvements for which taxes had been assessed and paid.

 Under Illinois law, it is issuance of the tax deed—not the tax sale itself—that extinguishes existing liens on property sold for taxes. *See Lincoln Park Federal Savings & Loan Ass'n v. DRG, Inc.*, 175 Ill.App.3d 176, 124 Ill.Dec. 790, 791, 529 N.E.2d 771, 772 (1988). Rochman's payment of the taxes accruing both before and after the tax sale gave him a right to the subject real estate as it existed at the time of the tax deed. Thus, to the extent the mobile home was part of the real estate described in Rochman's tax deed, the mobile home was conveyed to Rochman free of prior encumbrances, which were rendered void on issuance of the tax deed. The rule of *Pappmeier*, therefore, is applicable to this case even though the mobile home was placed on the property after the tax sale.

### II.

The Bank contends that the mobile home retained its status as personal property and never became part of the real estate conveyed to Rochman. At trial, counsel for the Bank offered no reason why the mobile home was not a fixture, stating only that "tying the mobile home down to the land" did not make it real estate. Counsel acknowledged that, under *Pappmeier*, the Bank's lien would have been lost if the mobile home had been on the property and "fixed and the wheels gone" at the time of the sale. He asserted, however, that the mobile home was personal property "with a certificate of title like a car."

Rochman, for his part, notes that the mobile home was assessed as real estate, coming within the Revenue Act definition of "real property" as a structure "resting in whole on a permanent foundation." *See* 35 ILCS 205/1(13). He asserts that the mobile home became a fixture when the debtor removed the wheels and placed it on

---

7. Section 253 provides that a person redeeming from a tax sale must pay all taxes accruing after the tax sale, with a penalty for each year intervening between the time of payment and the time of redemption, if the tax sale purchaser has paid the subsequent taxes after they became delinquent. This provision requires the clerk to include in the redemption certificate the amount of subsequent taxes paid by the tax purchaser. However, the statute relieves the clerk of the burden of determining whether these taxes have been paid by providing for the filing of an official receipt within a specified period prior to redemption. *See Bouhl v. Gross*.

a permanent foundation, thus attaching it to the land.

■ Personal property which is physically attached to real estate by one having an interest in the land constitutes a "fixture." A fixture is, by definition, real property because it is incorporated in or attached to the realty. 19A Ill.L. & Prac., *Fixtures,* § 2, at 11 (1991) (hereinafter *ILP Fixtures* ). Whether a particular item of personal property has become a fixture depends on the facts and circumstances of a case and is a mixed question of fact and law. *See Borrowman v. Howland,* 119 Ill.App.3d 493, 75 Ill.Dec. 313, 317, 457 N.E.2d 103, 107 (1983); *Davis Store Fixtures, Inc. v. Cadillac Club,* 60 Ill.App.2d 106, 207 N.E.2d 711, 713 (1965).

■ Illinois courts apply three criteria to determine whether an article or structure is a fixture: (1) actual annexation to the realty, (2) application to the use or purpose for which the land is appropriated, and (3) intention to make the article a permanent accession to the realty. *See Sword v. Low,* 122 Ill. 487, 496, 13 N.E. 826, 828 (1887); *Beeler v. Boylan,* 106 Ill.App.3d 667, 62 Ill.Dec. 385, 387, 435 N.E.2d 1357, 1359 (1982). Of these, intention is the most important factor, and annexation and adaptability merely bear upon and give evidence of the affixer's intent. *ILP Fixtures,* § 3; *Kelly v. Austin,* 46 Ill. 156, 158–59 (1867); *Thuma v. Granada Hotel Corp.,* 269 Ill.App. 484, at 491, 500 (1933); *see* 35 Am.Jur.2d *Fixtures,* § 14 (1967) (hereinafter *Am.Jur. Fixtures* ). Intention is to be inferred from circumstances surrounding the transaction, including the relation of the one making the annexation, the nature of the article affixed, the mode of attachment, and the purpose for which the annexation was made. *In re Theodore Kochs Co.,* 120 F.2d 603, 605–606 (7th Cir. 1941); *see Am.Jur. Fixtures,* § 15, at 712.

■ The relation of the annexer to the realty is significant in discerning intent, as it is presumed that an annexation by one who owns the land is made with the design of its permanent enjoyment with the realty. *National Blvd. Bank of Chicago v. Citizens Utilities Co. of Ill.,* 107 Ill.App.3d 992, 63 Ill.Dec. 540, 548, 438 N.E.2d 471, 479 (1982); *Ayrshire Coal Co. v. Property Tax Appeal Bd.,* 19 Ill.App.3d 41, 310 N.E.2d 667, 671 (1974). This presumption is not lessened where the annexer has mortgaged the land or where title is uncertain, as the requisite intent is an objective one and is not affected by an undisclosed intention to remove the structure in the event title is lost. *See Am.Jur. Fixtures,* § 15, at 711 (1967); *cf. Arnold v. Crowder,* 81 Ill. 56, 59 (1876) (court ruled that scales erected for mortgagor's use passed with real estate upon foreclosure, finding that mortgagor "fixed [them] to the soil ... for a permanent purpose, as he might never have been deprived of the ownership of the premises").

■ In this case, the debtor attached the mobile home to his land after the tax sale but before the period of redemption had expired. At the time of attachment, the debtor owned the land and had the right to redeem from the tax sale in order to protect his title. *See In re Young,* 14 B.R. 809, 812 (Bankr.N.D.Ill.1981) (Illinois tax sale does not affect title to property which becomes subject to tax certificate lien). The stipulated facts show that the debtor previously resided in this location and that he continued his residence there, albeit in the present mobile home that replaced the one on the property at the time of sale. Thus, in the absence of contrary evidence, it may be presumed that the debtor intended to attach the mobile home to the land permanently in order to enjoy it along with the real estate to which he held title and the right of redemption.

■ The nature of the mobile home and the mode of its attachment to the land support the presumption that the debtor intended the mobile home to become a permanent part of the real estate. Courts dealing with the issue of whether a mobile home is real estate have made reference to the dual nature of mobile homes, observing that "mobile" is often more of a euphemism than "home." *Cf. In re Hockinson,* 60 B.R. 250, 253, n. 6 (Bankr.N.D.Ill.1986) (mobile home connected to real estate was

"mobile" only in technical sense). As stated in *United States of America v. One 1989 Stratford Fairmont 14' × 70' Mobile Home*, 783 F.Supp. 1154, 1160 (1992), "it is unrealistic to view [a] wholly nonperipatetic mobile home as something other than 'real property' simply because the word 'mobile' is tacked on before the word 'home'[.]" In *George v. Commercial Credit Corp.*, 440 F.2d 551, 553 (7th Cir.1971), the Seventh Circuit noted the distinction between mobile homes (used as homes) and motor homes (those often used as vehicles) and found that a mobile home " 'employed solely as an economical means of housing' " had become a fixture. The court observed that "the very size and difficulty of transporting the mobile home ... highlight[ed] the fact that this was a vehicle which was intended primarily to be placed in one position for a long period of time and to be used as an intended permanent home." *Id.* at 554.

▬▬ The size of the mobile home here—60' × 14' with 840 square feet of living space—likewise renders its transportation difficult and indicates that it was intended to remain indefinitely in a stationary position. This conclusion is buttressed by the fact that the debtor removed the wheels from the mobile home and physically attached it to a concrete block foundation. While the methods and extent of affixation vary widely in cases in which mobile homes have been identified as fixtures, attachment to a permanent foundation is generally considered strong evidence of intent that a mobile home become a permanent part of the real estate. *See, e.g., In re Morphis*, 30 B.R. 589 (Bankr. N.D.Ala.1983); *In re Fink*, 4 B.R. 741 (Bankr.W.D.N.Y.1980); *C.I.T. Financial Services v. Premier Corp.*, 747 P.2d 934

(Okla.1987); *Hartford National Bank & Trust Co. v. Godin*, 137 Vt. 39, 398 A.2d 286 (1979); *Bell v. City of Corbin City*, 164 N.J.Super. 21, 395 A.2d 546 (App.Div.1978); *see also In re Speights*, 131 B.R. 205 (Bankr.N.D.Fla.1991). By contrast, mobile homes not placed on a permanent foundation have been found to be personalty rather than fixtures. *See In re Gray*, 40 B.R. 429 (Bankr.W.D.Okla.1984) (court found no demonstrable fixation to realty where there was no permanent foundation and the wheels were not removed); *United States of America v. Shelby County, Tennessee*, 385 F.Supp. 1187 (W.D.Tenn.1974) (court found that trailers were not permanently affixed to land where they were connected with cable or anchor "grounded" by auger end screwed or driven into ground).[8]

In this case, the fact that the mobile home was assessed as real property, although not conclusive of its status as realty, supports the inference that the mobile home was attached to the land with a permanent foundation. The Illinois Revenue Act defines "real property" for purposes of taxation as "not only the land itself, but also all buildings, structures and improvements, *and other permanent fixtures ...*"

> Included therein is any vehicle or similar portable structure used ... as a dwelling place ..., *if such structure is resting in whole on a permanent foundation.*

Ill.Rev.Stat. 35 ILCS 205/1(13) (emphasis added). The statute includes as "real property" a mobile home resting on a permanent foundation.[9] Thus, the mobile home's assessment as real estate indicates that it was attached to the property in such a way as to become a fixture.

---

**8.** The Court is aware of the line of cases holding that removing the wheels from a mobile home and placing it on a permanent foundation does not convert the mobile home into a "permanent structure" for purposes of restrictive covenants or zoning restrictions that prohibit mobile homes. *See Brownfield Subdivision, Inc. v. McKee*, 61 Ill.2d 168, 334 N.E.2d 131 (1975) and cases cited therein. These cases, however, are inapplicable to the issue of whether a mobile home has been attached with the requisite intent that it become part of the real estate, as it is

not necessary that the mobile home cease to be a "mobile home" or that it lose its ability to be moved in order to constitute a fixture. *See Murray v. Zerbel*, 159 Ariz. 99, 102, 764 P.2d 1158, 1161 (Ariz.App.1988).

**9.** By contrast, a mobile home placed on a "temporary foundation" is taxed pursuant to the Illinois mobile home privilege tax. *See* 35 ILCS 515/1 (1993).

The stipulated facts support Rochman's assertion that the debtor attached the mobile home to his land with the requisite intent that it become a part of the real estate. The Bank has offered nothing to rebut Rochman's case and, in fact, has conceded that the mobile home was "tied down" or "fixed" to the real estate. The Bank's only argument appears to be that the mobile home remained personal property because it was titled as a vehicle before it became affixed to the debtor's real estate. It is the very nature of a "fixture" that it was once personal property before its transformation into real property. For this reason, parties dealing with personal property that may become a fixture, such as a mobile home, must be wary to protect their interests in that event and cannot rely on actions taken before the property became affixed to and part of the real estate. *See In re Beabout*, 110 B.R. 883, 887 (Bankr.S.D.Ill.1990).

In this case, the Bank received notice that the real estate on which the mobile home was located had been sold for delinquent taxes and was apprised that a tax deed would be issued to Rochman if the property were not redeemed. The Bank, however, chose not to redeem or otherwise participate in the tax deed proceeding,[10] and the resulting tax deed extinguished the Bank's lien in the mobile home which had become part of the real estate. As noted in *Pappmeier*, this outcome does not create an undue hardship upon lienholders such as the Bank, as the Bank could have protected its interest in the property by redeeming from the tax sale, a practice routinely employed by mortgage holders. *See Pappmeier*, 140 Ill.Dec. at 691, 550 N.E.2d at 576.

The Bank decries the inequity of Rochman receiving a mobile home that was not on the land at the time of the tax sale since Rochman presumably did not take this property into account in determining the amount bid at the sale. As discussed above, Rochman paid the taxes that were assessed on the mobile home after the tax sale and thus gained the right to receive it upon issuance of the tax deed. The Bank took no steps to protect its interest in the mobile home, including any payment of taxes. From the parties' representations of the respective values of the land and the mobile home and from the assessment record submitted as an exhibit, it appears that the greater part of the total taxes were attributable to the mobile home rather than to the land itself, and Rochman's payment of taxes assessed after the mobile home was placed on the property reflected the amount attributable to it. Rochman thus was not unjustly enriched in receiving the mobile home as part of the property conveyed by the tax deed.[11]

For the reasons stated, the Court finds that the Bank's lien was rendered void upon issuance of the tax deed. The Bank's claim for the amount owed on the mobile home is, therefore, an unsecured claim, and Rochman is entitled to payment for the mobile home through the debtor's Chapter 13 plan pursuant to their agreement.

The Court makes no finding concerning Rochman's prayer for attorney fees incurred in this action. While he contends that the Bank's filing of a claim in this bankruptcy proceeding after having lost its secured status in the tax deed case indicates a lack of good faith, he cites no authority for imposition of attorney fees in

---

10. Section 253 of the Revenue Act provides for redemption by owners and "persons interested in the real estate." 35 ILCS 205/253(a). While a stranger to the property has no right to redeem property sold for delinquent taxes, legal or record title is not required; the person seeking to redeem need only have an undefined interest in the property. *See County Collector of DuPage Co. v. Bodoh*, 98 Ill.App.3d 950, 54 Ill. Dec. 301, 303–04, 424 N.E.2d 1204, 1206–7 (1981).

11. The Court finds no merit in the Bank's additional argument that the tax deed was deficient under Illinois law because it did not specify the "true post office address" of the county clerk of Pulaski County. *See* 35 ILCS 205/258. It is manifest that the state court was the proper forum in which to question the validity of the tax deed, and the Bank, having failed to participate in the tax deed proceeding or appeal from the state court decision, may not collaterally attack the sufficiency of the deed in this proceeding.

such a circumstance. If Rochman wishes to pursue this matter, he is directed to provide the Court with authority for the imposition of attorney fees and a statement of fees incurred in this action.