**In re Luther Earl HARRIS, SSN 524—42—8548, Debtor.**

**Bankruptcy No. 92–13474 PAC.**

United States Bankruptcy Court, D. Colorado.

March 30, 1994.

Joseph T. Carroll, Jr., Korb, Carroll & Manges, Fort Collins, CO., for debtor.

John A. O'Brien, Moye, Giles, O'Keefe, Vermeire & Gorrell, Denver, CO., for Union Colony Bank.

**ORDER**

PATRICIA A. CLARK, Bankruptcy Judge.

The matters before the Court are Union Colony Bank's (Bank) objection to debtor's claim of exemption in a 1979 Century Classic, 24 × 52 foot mobile home (Mobile Home) and the issue of whether sanctions should be imposed against the debtor's former counsel. The matters have been pled and briefed. The Court does not find that additional evidence or testimony is necessary to resolve these issues.

The relevant facts are as follows:

1. The property where the Mobile Home was located is a 10–acre parcel acquired by the Debtor in 1977. The address of the property is 7301 Southwest Frontage Road, Fort Collins, Colorado (the I–25 Property). In 1979, the Debtor placed the Mobile Home on the I–25 Property. The Mobile Home had the wheels and axles removed, it was connected to the ground by utility hook-ups (water, sewer and power) and it sat on concrete blocks. The Mobile Home had skirting, six anchors and stairs affixed to it.

2. The I–25 Property and all appurtenances thereto were given as partial security to the Bank on June 6, 1988, for a $1.5 million loan to the Debtor's corporation HTC. The Debtor used this property to retail boats for his corporation HTC.

3. The Deed of Trust on the I–25 Property waived the claim to a homestead.

4. In 1991, HTC failed as a business and defaulted on the obligations to the Bank.

5. On October 31, 1991, the Bank commenced foreclosure proceedings and had a receiver appointed.

6. On or about November 1, 1991, the Debtor vacated the Mobile Home.[1]

7. On November 14, 1991, HTC filed a petition for relief under Chapter 7 of the Bankruptcy Code.

8. The Debtor filed for bankruptcy on March 24, 1992. His scheduled address is listed as 5901 S.W. Frontage Road, Fort Collins, CO 80525. He filed his claim of exemptions on April 8, 1992. At that time he did not declare any homestead exemption.

9. On May 26, 1992, the Bank obtained relief from stay in the Debtor's case to continue the foreclosure.

10. On September 10, 1992, the property was sold along with the improvements (e.g., the Mobile Home). The Bank bought the property at the foreclosure sale.

11. The six month redemption period expired on March 16, 1993, and a public trustee's deed issued.

12. On March 4, 1993, the debtor allegedly entered the property and pulled-one-half of the Mobile Home off of the foundation. The Larimer County Sheriff interceded and prevented the removal of the Mobile Home.

13. The receiver moved the house to a secure location on March 18, 1993.

14. On March 26, 1993, the Debtor amended his Schedule B to include the Mobile Home and Schedule C to claim it as a $30,000 exemption in the Mobile Home under C.R.S. § 38–41–201.6.

There are three questions presented to the Court based upon these facts. Was the homestead exemption waived in the deed of trust; did the Mobile Home become a fixture such that the Debtor was not entitled to claim an exemption under Section 38–41–201.6; is the debtor precluded by the doctrines of estoppel, laches or waiver from claiming an exemption. In addition, there is a collateral issue of whether the Debtor was entitled to the homestead exemption as he

did not have a Certificate of Title as of the petition date.

The Trustee did not object to the objection to claimed exemption. He filed a statement declaring that he thought the Mobile Home was sufficiently connected to the property to make it an improvement. Therefore, the Trustee thought that the Bank's lien encumbered the property. The Trustee believes that if the home was not sufficiently connected to the real estate to become an improvement, then the Debtor would be entitled to the exemption.

The Bank asserts that the Mobile Home is a fixture on the I–25 property; that it was covered by the deed of trust as an improvement to the property; that it was foreclosed upon and sold with the property before any claim to an exemption was raised. In addition, the Bank maintains that the Debtor abandoned the property on November 1, 1991. Finally, the Bank alleges that the principles of estoppel, laches and waiver should prevent the Debtor from claiming an exemption.

The Debtor claims that the Mobile Home is not a fixture. He did not file the Certificate of Title as set forth under C.R.S. § 38–19–112 to have the property treated as real estate for tax purposes.

As to the first question it is clear and the Court so finds that if the Mobile Home is a fixture any homestead exemption in the I–25 property was waived in the Deed of Trust. The critical inquiry is whether the Mobile Home was a fixture.

There is a paucity of authority on this issue in Colorado. However, there are numerous cases from other jurisdictions which have considered the question of when such a home becomes a fixture. The Bank urges the Court to adopt the test from *Corning Bank v. Bank of Rector*, 265 Ark. 68, 576 S.W.2d 949 (1979), to determine when a property becomes a fixture. That text examines:

1. real or constructive annexation to the real estate in question;

---

1. The "abandonment" does not appear to have been voluntary as there was an eviction notice and the receiver had turned off the electricity.

2. appropriation or adaptation to the use or purposes of that part of the realty for which it is connected;

3. the intention of the party making the annexation to make a permanent accession to the realty, this intention being inferred from the nature of the chattel, the relation and situation of the party making the annexation, the structure and the purpose for which the annexation has been made; and

4. the likelihood that removal would cause substantial injury to the realty.

In a recent bankruptcy decision on this issue, *In re Casper*, 156 B.R. 794 (Bankr. S.D.Ill.1993), the court noted several determinative factors to resolve the issue of when a mobile home becomes affixed to realty. It stated that "the relation of the annexer to the realty is significant in discerning intent, as it is presumed that an annexation by one who owns the land is made with the design of its permanent enjoyment with the realty." *Id.* at 800. In addition, the court observed that when the dual nature of mobile homes is considered, "mobile" is often more of a euphemism than "home." *Id.* (citation omitted). Another comment was that the difficulty of transportation of a home based upon its size indicates an intent to remain indefinitely in a stationary position. (In *Casper* the intent was buttressed because the debtor removed the wheels and physically attached it to a concrete block foundation.) Finally, the court stated that assessment of the home as real property is not conclusive of its status as realty, it merely supports an inference of its status as realty. (There the court found the home to be part of the realty as the debtor owned the land where the home was located, the wheels were removed on the large 60 foot by 14 foot mobile home and it was underpinned on concrete blocks.)

Other jurisdictions have found certain factors indicative for a mobile home to becomes a fixture. For example, in *In re Fink*, 4 B.R. 741 (Bankr.W.D.N.Y.1980), the court found that a mobile home was a fixture as it had footings, a septic tank system, electricity, it would have to be dismantled into two parts and the roofing removed to take the home onto highway.

In another case, *George v. Commercial Credit Corp.*, 440 F.2d 551 (7th Cir.1971). The court found the following facts indicated that the mobile home was a fixture: the intention to affix it to the land as a permanent residence, there was a septic tank, the house was set on cinder blocks, it was connected to electricity, due to its size it would be difficult to move and the wheels had been removed.

Another example comes from the case of *Hartford National Bank & Trust Co. v. Godin*, 137 Vt. 39, 398 A.2d 286 (1979). There the mobile home became a fixture with its installation on the mortgaged premises. The court found the intent to make the home part of the realty was evidenced by a concrete block foundation, attached steps, a connected septic system and encasement of the foundation in aluminum foundation siding.

In the instant case, based upon Exhibit A to the verified statement of the Debtor it is uncontested that the Mobile Home was skirted, situated on concrete blocks with six anchors installed and one set of steps. In addition, the Bank asserts that the Mobile Home had a driveway, additional steps, a patio, a septic tank for the home, and underground connections to the water and power system. These assertions by the Bank are not disputed. The Debtor occupied the structure on the I–25 Property from October of 1979 through late 1991.

■ After reviewing the relevant facts and case authority, the Court finds that the property was annexed to the real estate. It was adapted for use at its location on the property via sewer, electric and water systems. The Debtor owned the property where the Mobile Home was located. Also, the length of time that the Debtor resided on the property indicates his intent for the structure to be permanent. The property was his residence, it was not part of the business. The removal of the large structure involved detaching the skirting, septic, electric and water systems, taking away the blocks, and returning the axles and wheels. Obviously, upon its removal there would be a driveway to no where, steps to no where and a bare spot on the land where it laid. Accordingly, the Court concludes that the Mobile Home

was a fixture. As such, it was sold with the property and the Debtor is not entitled to any exemption since it was waived in the Deed of Trust upon which the Bank had foreclosed.

The Court notes that under Section 38–4–201.6 it does not appear as though the Debtor was entitled to an exemption as of the petition date. Since the issue was not raised by the Bank, the Court will not base its ruling upon this fact.[2]

■ The Court does not find that Section 38–29–112(1.5) C.R.S. prevents the Court from holding that the Mobile Home became real property. Under that provision, a manufactured home becomes real property upon the inability of the home to be transferred and the filing of an application to purge the manufactured home title with the county agent where the home is located. The statutory framework does not prevent this Court from determining in this situation that the home was *de facto* part of the property.

Based upon the Court's ruling, it is not necessary to address the equitable arguments in favor of denying the Debtor's exemption.

As for the issue of sanctions, the Court does not find that sanctions are warranted based upon the concerns of the Bank and the Honorable Sidney Brooks which were raised at the hearing scheduled on this matter on May 18, 1993. The Court does not share the view that substitute counsel was unable to adequately prepare or that some sort of a brief should have been filed by the Debtor before the hearing.

■ This Court does find that sanctions should be imposed for counsel's failure to timely inform the Court and the Bank that the debtor had been suddenly admitted into the hospital and would be unable to attend the hearing. Counsel was aware of this event before he left Fort Collins for the hearing in Denver. Counsel did not notify the Bank or the Court of this fact until immediately prior to the hearing. Thus, everyone but the debtor appeared for the hearing. This was conduct which multiplied the proceedings and manifested an intentional or reckless disregard of the attorney's duties to the Court pursuant to 28 U.S.C. § 1927.

It appears that the Bank's witnesses should be compensated for their mileage and the Bank's counsel should be compensated for the amount of time spent in the courtroom on May 18, 1993. The Bank's current statement does not break out the time for attendance at the hearing. Also, the Court requires verification by affidavit or otherwise that the two witnesses from Greeley did not travel together and a statement why the witnesses were unable to travel together. Therefore, the Bank should file a statement of time spent in court on this matter on May 18, 1993 along with verification of and rationale behind the witnesses separate mileage. Debtor's counsel may file a response, if any, to the statement and show cause why he should not be sanctioned.

ORDERED that the Bank's objection to the Debtor's homestead exemption is sustained.

FURTHER ORDERED that the request for sanctions based upon the timing of substitution of counsel and the failure to file a legal brief on the issue is denied.

---

**2.** The basis for the exemption is Section 38–41–201.6. That statute provides:

A manufactured home as defined in section 38–29–102(6), which includes a mobile home as defined in section 38–12–201.5(2) or section 5–1–301(9.7), 12–51.5–101(4), or 42–1–102(82)(b), C.R.S., that has been purchased by an initial user or subsequent user and **for which a *certificate of title has been issued* in accordance with section 38–29–120 or pursuant to section 38–29–108 *is a homestead* and,** notwithstanding the provisions of section 13–54–102(1)(*o*)(II), C.R.S., is entitled to the *same exemption as enumerated in section 38–41–201,* except for any loans, debts or obligations incurred prior to January 1, 1983. For the purposes of this homestead exemption, the term "house" as used in section 38–41–205 shall be deemed to include mobile homes or manufactured homes. (Emphasis added.)

Here, a certificate of title was not issued until March 1993. Exemptions are determined as of the date of the petition. As of the petition date the Debtor did not have a certificate of title, he only had a certificate of purchase. Therefore, he does not appear to be entitled to the $30,000 homestead exemption claimed under this provision.

FURTHER ORDERED that on or before April 15, 1994, the Bank's counsel shall file a statement of the time he spent in court on this matter on May 18, 1993, and a verification of the Bank's witnesses entitlement to separate mileage for their appearance on that date. The statement and verification shall be served upon Debtor's counsel.

FURTHER ORDERED that on or before April 26, 1994, the Debtor's counsel shall file a response, if any, to the reasonableness of the hourly rate and time reported in the statement and verification of mileage and otherwise show cause why sanctions should not be imposed.