**In the Matter of Pauline FINK, Bankrupt.**

**Pauline FINK, Louis A. Ryen, as Trustee, Plaintiff,**

**v.**

**WEMCO CORP. and Endicott Trust Company, Defendants.**

**Bankruptcy No. B–79–2539 AP 218.**

United States Bankruptcy Court, W. D. New York.

July 11, 1980.

---

Lacy, Katzen, Jones & Ryen by David D. MacKnight, Rochester, N.Y., for plaintiff, Pauline Fink.

Charles E. Strobel, Rochester, N.Y., for defendant, Wemco Corp.

Leasure, Gow & Rizzuto by James H. Huyck, III, Endicott, N.Y., for defendant, Endicott Trust Co.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This is an action by the Trustee to avoid a security interest in a mobile house claimed by defendant, Endicott Trust Company of New York hereinafter referred to as "Endicott" and to preserve that lien pursuant to Bankruptcy Rule 611 as to defendant Wemco Corp. hereinafter referred to as "Wemco".

The facts appear to be as follows. The bankrupt, Pauline Fink, purchased a mobile home from Palmer Mobile Homes, Inc. on or about August 20, 1977. She entered into a retail installment contract. The security interest was transferred by assignment to Endicott on or about August 20, 1977. Endicott filed a financing statement which described the collateral as 24 × 52 1977 Bendix. Thereafter, the mobile home was delivered to Route 415 in the Town of Campbell which the bankrupt was leasing from Wemco. On August 24, 1977, the bankrupt contracted to purchase the real property on which the mobile home was placed from Wemco for $24,000. The realty consisted of about four acres and the only structure, thereon, was a store. The realty was transferred on December 1, 1977 by Wemco to the bankrupt and the bankrupt gave back to Wemco a purchase money mortgage for the full purchase price of $24,000.

The mobile home or modular home, which ever it may be, was delivered by Palmer Mobile Homes, Inc. and was placed on a foundation of concrete footers, concrete blocks and steel and wooden beams running the width and length of the building.

The details of construction follow. A foundation was evacuated. A septic tank was installed. Concrete footers were installed around the edge of the crawl space and at least one pillar of concrete blocks was erected in the center of the crawl space. Concrete blocks were installed and cemented to the footers. After this was done, the house was delivered to the lot in two sections (12′ × 52′) on steel cradles. The sections with cradles were then placed on the cement blocks. The house sections were bolted together. A roof cap was put on over the place in the roof where the sections were joined together and it was cemented and nailed down. Siding was put on the two ends of the house and nailed over the spot where the joinder of the section occurred to give the appearance of a continuous wall. The septic system was hooked up. Water lines were connected. An electrical line was connected to the

store's system and the store's electrical system and capacity were increased. At this point, the top course of cinder blocks were placed in but not cemented to the course immediately below. No tie downs were used in the construction. The house even has an open fireplace, although this hangs on the side of the house. From the pictures in evidence, the house appears to be a normal ranch home without front or back steps.

Additional facts which were developed at the trial follow. Palmer, who installed the mobile home on the foundation, testified that he could remove and transport the home for about $500 by removing the roof cap and the siding and shingles from the end, disconnect water lines, electric septic tank and unbolt the sections of the house and transport it on the cradle of steel beams which support each section.

The officer of Wemco said that the house was constructed in the same fashion as any construction and that the attachment to realty was the same as any stick built house.

Additionally, when Wemco transferred the property to the bankrupt, Fink, in December, 1977, the attorney for Wemco had the abstract redated. There was nothing on the abstract that gave Wemco any notice of an interest by Endicott in the house. Wemco, when it transferred the property to Mrs. Fink, took back a purchase money mortgage for $24,000.

The facts stated above raise the issue as to whether or not the home in question is a chattel that requires perfection by filing pursuant to New York State UCC 9–302(1)(d) or a fixture attached to real property that requires filing in accordance with New York State UCC 9–313(1)(a). Section 9–302(1)(d) of the Uniform Commercial Code holds that a financing statement must be filed to perfect a security interest in a motor vehicle. This section has been held to govern mobile homes (see *In re Vinarsky,* 287 F.Supp. 466 (N.D.N.Y. 1968); *Albany Discount Corp. v. Mohawk National Bank,*

54 Misc.2d 238, 282 N.Y.S.2d 401 (1967); *Recchio v. Manufacturers and Traders Trust Company,* 35 A.D.2d 769, 316 N.Y. S.2d 915 (4th Dept. 1971). UCC § 9–313 requires a special filing where the item is a fixture. The filing must be in the office where a mortgage on real estate is filed and it must conform to the requirements of UCC § 9–402(5) which requires that a financing statement filed as a fixture must show that it covers this type of collateral, must recite that it is to be indexed in the real estate records and the financing statement must contain a description of the real estate sufficient for its identification and it must show the name of the record owner.

If the home in question is considered to have ceased to be personalty and become a fixture by annexation to the real property, the filing made by Endicott was improper. The case turns upon whether the home is personalty or a fixture.

UCC § 9–313 states in part that "(1)(a) 'goods' are fixtures when they become so related to particular real estate that an interest in them arises under real estate law." The official comments which accompany this section say in part, "in cases where mobile homes or prefabricated steel buildings are erected by a person having an ownership interest in the land, the question into which category the buildings fall is one determined by local law." The definition of fixture is not an exact one. Recent law review article on the subject of fixtures under the UCC defines the term as follows:

A fixture is a former chattel which, because of its annexation to and association with realty, has become part and parcel thereof but which has not lost its separate physical identity. A fixture is neither personalty nor realty within a strict definition of those terms. Rather, it partakes of the characteristics of each, since prior to annexation it is movable and not associated with realty, but after annexation it loses its character as personalty and is deemed realty. Various definitions of fixture have been utilized, all of which

emphasize the former chattel aspect and the annexation to realty.[1]

23 N.Y. Jur. *Fixtures* § 2 (1962) says as follows:

As a general rule, the true criterion of a fixture is based on the united application of three requisites: (1) actual annexation to the real property or something appurenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold . . .

*In re Lido Beach Sewage Collection Dist.,* 40 Misc.2d 384, 243 N.Y.S.2d 223 (County Ct. 1963), said at page 385, 243 N.Y.S.2d at page 225:

Ordinarily for an article to become a fixture the following requisites must be met: Firstly, there must be annexation to the realty. Secondly, there must be adaptability of the article affixed to the use of the freehold. Thirdly, the intention of the party creating the annexation is to make the article a permanent accession to the freehold.

The two cases which have dealt with mobile homes in the context of UCC 9–313 are *In re Foskett*, 7 UCC Rep.Serv. 267 (W.D. Wisc. 1970) and *George v. Commercial Credit Corp.*, 440 F.2d 551 (7th Cir. 1971). They seem to follow the New York State tests set forth above. A recent 1979 Vermont Supreme Court case, *Hartford Nat'l Bank & Trust Co. v. Godin*, 398 A.2d 286, 26 UCC Rep.Serv. 221 (Vt.Sup.Ct. 1979), also held a mobile home a fixture based on the same three tests set forth above.

Applying these principles to the case at bar, we find that the bankrupt contracted to purchase the mobile home at about the same time she entered into a contract to purchase the realty. She had a crawl space dug. She had footings installed and she had cinder block cemented to the footings to hold the home. The bankrupt installed a septic tank system, ran water and electric into the home. The bankrupt lived in the home.

Looking at the house, in the pictures that were taken of the house, it looks at least to the uninitiated eye like any other ranch house you might see erected in the country. There would be nothing to warn anyone that this was in fact a trailer or a motor vehicle. If it was a trailer, it came certainly in two parts and had to be separated into two parts to be moved along the road. Should someone wish to move the house, they would have to dismantle it, separate it into two parts, remove part of the roofing and remove five to six feet of the center strips of shingles at either end of the home. The house in the manner in which it was annexed to real property certainly meets the test set forth in the cases cited above. Therefore, this Court finds that Endicott is an unsecured creditor and that their filing should have been under UCC § 9–313 rather than under UCC § 9–302(1)(d).

With regard to Wemco's interest, it is paramount to the trustee because Wemco had a filed mortgage agreement which is a lien upon the real property.

This Memorandum and Decision shall constitute Findings of Fact and Conclusions of Law in accordance with Rule 752 of the Rules of Bankruptcy Procedure.

---

**1.** *Trade Fixture-Secured Transactions Under New York's Uniform Commercial Code*, 44 Alb. L.Rev. 165, 165 (1979).