**In re Roger Dale JOHNSON and Bonnie Sue Johnson, Debtors.**

**Raymond G. DODSON, Trustee, Plaintiff,**

**v.**

**ONE VALLEY BANK OF OAK HILL, INC., Defendant.**

**Bankruptcy No. 88–20495. Adv. No. 88–0155.**

United States Bankruptcy Court, S.D. West Virginia.

Sept. 26, 1989.

Arthur M. Standish, Dodson, Riccardi & Lutz, Charleston, W. Va., for trustee/plaintiff.

Edward W. Rugeley, Jr., John R. Lukens, Dana F. Eddy, Jackson & Kelly, Charleston, W. Va., for One Valley Bank of Oak Hill, Inc.

## MEMORANDUM OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND AVOIDING DEFENDANT'S LIEN

RONALD G. PEARSON, Bankruptcy Judge.

The issue in this proceeding is whether a secured party's purchase money security interest in a mobile home was perfected against third parties by filing financial statements with the Secretary of State and in the county in which the mobile home was located. A lien was not shown on a certificate of title for the vehicle. This matter is before the Court as a result of the motion of the defendant, One Valley Bank of Oak Hill, Inc. [the Bank], for summary judgment following the complaint of the plaintiff-Trustee, Raymond G. Dodson, to determine the extent and validity of the Bank's lien and to avoid the lien pursuant to §§ 544 and 502(b) of the Bankruptcy Code of 1978, 11 U.S.C.A. § 544(a) (West Supp. 1989). The facts are undisputed and the parties agree that West Virginia Code § 46–9–302 (Supp.1989) governs the perfection of the security interest in question.

The Trustee asserts that pursuant to West Virginia Code § 17A–4A–3, defendant's lien, not recorded and shown on the face of the certificate of title for the mobile home, is void as to the Trustee, who, under

§ 544(a) stands in the shoes of a judicial lienholder or bona fide purchaser of real property as of the date of commencement of the case. The Court agrees.

In February of 1988, Roger D. Johnson and Bonnie Sue Johnson [buyers] became indebted to the defendant and granted the Bank a security interest in a mobile home under the terms of a sales contract between the Johnsons and the seller, P.D.Q. Homes, Inc. The mobile home, with the wheels removed, was set on leased property in Kanawha County. Financing statements describing the mobile home, and signed by the Johnsons and the defendant, were filed that month in the offices of the Secretary of State of West Virginia and the County Clerk of Kanawha County. No certificate of title was requested from the West Virginia Department of Motor Vehicles. On June 24, 1988, the Johnsons filed for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 701, *et seq.* Three months later, on September 28, 1988, the plaintiff filed a complaint objecting to the secured claim of the defendant Bank and seeking to avoid defendant's lien on the mobile home under § 544. On February 6, 1989, defendant moved for summary judgment.

■ West Virginia Code § 46–9–302(1)(d) provides that a financing statement must be filed to perfect all security interests except a purchase money security interest in consumer goods, but further provides· that filing is necessary for a "motor vehicle required to be registered." Section 46–9–302(3)(b) states that a filed financing statement "otherwise required by this article is not necessary *or effective* to perfect a security interest in property" [*emphasis added*] subject to Chapter 17A of the West Virginia Code, except where the subject property is inventory held for resale. Chapter 17A of the West Virginia Code

controls motor vehicle administration. Section 17A–3–2 provides:

> Every motor vehicle, trailer, semi-trailer and pole trailer when driven or moved upon a highway shall be subject to the registration and certificate of title provisions of this chapter except:
>
> (1) Any such vehicle driven or moved upon a highway in conformance with the provisions of this chapter relating to manufacturers, transporters, dealers, lienholders or nonresidents or under a temporary registration permit issued by the department as hereinafter authorized;[1]

W.Va.Code § 17A–3–2 (Supp.1989).

■ Under § 17A–4A–1, liens on vehicles for which certificates of title are required are to be shown on the certificates. Section 17A–4A–3 provides that a lien recorded on a certificate of title gives adequate notice that a lien exists to creditors and purchasers and the recording of such lien elsewhere is unnecessary and has no effect. Section 17A–4A–3 expressly provides that any lien placed upon a vehicle but not shown on such certificate of title shall be void as to any subsequent purchaser for value or lien creditor.[2]

■ Section 46–9–109 of the West Virginia Code classifies goods as consumer goods, equipment, farm products and inventory. It is clear that the mobile home in this case meets the description of a consumer good, broadly defined under § 46–9–109(1) as goods used or bought for use primarily for personal family or household purposes. Other cases similarly finding that mobile homes are consumer goods are *In re Brown,* 45 B.R. 766 (Bankr.N.D. N.Y., 1985); *In re Williams,* 10 U.C.C.Rep. Serv. 277, 281 (D.Me.1971); *In re Sewell,* 32 B.R. 116 (Bankr.N.D.Ala.1983), *reversed on other grounds; First National Bank of Wetumpka v. Sewell,* 79 B.R. 36 (N.D. Ala.1984).

---

**1.** Holders of security interests on mobile homes which are inventory held for resale by dealers in goods of that kind may perfect under § 46–9–302(3)(b) without having the liens shown on certificates of title.

**2.** Section 17A–4A–3 provides that pursuant to § 17A–4A–4, application for certificate of title showing a deferred purchase money lien to be placed on a vehicle, filed within thirty days after the purchase of the vehicle, is valid as if the filing had been made on the day the lien was acquired.

Defendant argues that the buyers' intent not to move the house trailer, as evidenced by its being placed on blocks with the wheels removed and hooked to a water source, and as further evidenced by the buyers' ordering of skirting for the vehicle, places the mobile home outside the requirement to be registered under Chapter 17A of the West Virginia Code. Evidence suggesting permanent placement of the mobile home upon the land would be relevant if the defendant were asserting that the vehicle had become a fixture which would be governed by different perfection requirements, but defendant makes no such claim and the Court does not examine that issue.

The effective procedure for lien perfection in this case then turns on whether the mobile home is a "motor vehicle" within the context of § 46–9–302(1)(d), and if so, if it is within the class of motor vehicles "required to be registered" under § 17A–3–2.

Defendant argues that because a mobile home does not have a motor and is merely a vehicle, as described at § 17A–1–1, that it is therefore a consumer good not requiring filing of a financing statement to perfect a purchase money security interest in the vehicle, and thus does not fall within the purview of § 46–9–302(3)(b), which states that a filing otherwise required by Chapter 46, Article 9, is ineffective as to property subject to Chapter 17A of the West Virginia Code, governing vehicles required to have certificates of title.

It is well established that the strict letter of a legislative act must yield to the evident purpose and spirit of the act to give effect to the intent of the lawmakers. *Fleischmann Const. Co. v. U.S.*, 270 U.S. 349, 46 S.Ct. 284, 70 L.Ed. 624 (1926); *Brown v. Gates*, 15 W.Va. 131 (1879); *Wooddell v. Dailey*, 160 W.Va. 65, 230 S.E.2d 466 (1976), *reh'g denied* Feb. 28, 1977.

A thorough reading of Chapter 17A of the West Virginia Code reveals that the Legislature contemplated the registration of mobile homes. Section 17A–3–2 includes trailers among vehicles which shall be subject to the registration and certificate of title provisions when those vehicles are moved on the highway. Section 17A–10–1, which classifies vehicles for registration, places house trailers in Class R. Section 17A–4A–1 provides for the showing of liens on the certificates of title of a "vehicle, trailer, semi-trailer, or pole trailer" for which a certificate of title is required pursuant to § 17A–3–1, *et seq.*

While it is true in the literal sense that a mobile home, lacking a motor, is not a motor vehicle, it is apparent in the statutory sense that a mobile home is classified as a motor vehicle so far as the Legislature's intent to submit mobile homes to the registration of title statutes in Chapter 17A of the West Virginia Code for the purpose of lien perfection. For that reason, defendant's position that the mobile home is not subject to the registration provisions of Chapter 17A is untenable. Under the facts in this case, a mobile home is a motor vehicle within the context of § 46–9–302(1)(d). The remaining question is whether, for the purpose of determining the perfection of a security interest, a mobile home is a vehicle "required to be registered" under § 17A–3–2.

Defendant argues that because the mobile home in question was moved from the dealer's lot to the Debtors' rental residential location by the dealer, the mobile home falls within the § 17A–3–2(1) exception quoted earlier in this Memorandum Opinion. The defendant's reliance on this reasoning ignores both the dual purposes of licensing and lien perfection with which the Legislature burdened Chapter 17A and the distinction between State licensing practices for automobiles and certain other vehicles as compared to mobile homes. West Virginia does not require annual registration of mobile homes and does not issue license plates for Class R mobile homes. Movement of mobile homes on the highway is regulated by the State by requiring that the mover—whether a dealer, a professional mover or salvager, or the owner—obtain a permit from the Department of Motor Vehicles. Dealers are authorized by § 17A–6–13(b) to use a Class

D–T/R special plate for one time only to move a house trailer sold by a house trailer dealer to a customer from the dealer's place of business to the customer's designated location. Sections 17A–7–1 and 17A–7–2 provide for stickers for one-time use to be provided to lenders, wreckers, dismantlers, dealers and others to authorize one-time driving or towing of a vehicle on the highway. Section 17A–7–3 provides for the issuance of special "one-movement" stickers to owners of house trailers permitting movement of trailers on the State's highways. These statutes, enacted to regulate movement of vehicles on the State's highways, do not address the registration of a vehicle for the purpose of obtaining a certificate of title.

The West Virginia Supreme Court of Appeals wrote in *Duncan Box & Lumber Co. v. Applied Energies, Inc.*, 165 W.Va. 473, 483, 270 S.E.2d 140, 146, 29 U.S.C.Rep. Serv. 1731 (1980), "An essential purpose of recordation of a security interest is to put third parties on notice that the debtor's property is subject to a creditor's security interest." Relying on § 17A–3–2(1) to except the mobile home from requirements relating to perfection of a lien by use of the certificate of title is to ignore an essential purpose of the Legislature's scheme to provide for notice to third parties of liens on titled consumer goods.

Automatic perfection of purchase money security interests in consumer goods relieves both the secured party and the lien filing system of the burden of filing financing statements for the high volume of relatively low cost and rapidly depreciating personal and household items purchased. Marginal benefit would be gained from requiring filing of security interests in such property, because consumer goods generally are rarely used as collateral for loans from anyone other than the purchase money lender. White and Summers, *Uniform Commercial Code, Practitioner's Ed. Vol. 2*, 3d ed., 329–30 (1988). But in the case of mobile homes, as with automobiles, where the goods are by their expensive and durable nature subject to be used as collateral for non-purchase-money loans, the need for certainty and notice regarding encumbrances outweighs the burden of affirmative lien perfection. At the time of the Debtors' purchase, the mobile nature of the goods reasonably dictated perfection on the certificate of title because, prior to 1989 amendments to the Code, perfection by filing financing statements pursuant to § 46–9–401 in the Secretary of State's Office and in the county where the goods are located, as was attempted in this case, could be defeated easily if the goods were moved to a different county and the lienholder, through lack of notice or neglect, did not file in the county of the new residence within four months. Prior to the 1989 amendments, West Virginia Code § 46–9–401(3) stated in part:

> A filing which is made in the proper county continues effective for four months after a change to another county of the debtor's residence or place of business or the location of the collateral, whichever controls the original filing. It becomes ineffective thereafter unless a copy of the financing statement signed by the secured party is filed in the new county within said period.

W.Va.Code § 46–9–401(3) (Supp.1988).

The 1989 amendments to W.Va.Code § 46–9–401(3) now permit a filing made in the proper county to continue effective after a change to another county, and removes the four-month time limit.

■ For the foregoing reasons, the Court holds that under the facts of this case, for the specific purpose of perfecting a lien on a mobile home, a mobile home is a consumer good and a motor vehicle required to be registered under W.Va.Code § 46–9–302(d), and that the sole effective means of perfecting a security interest in such a mobile home against third parties is to have the lien placed on the vehicle's certificate of title pursuant to § 17A–4A–1.

Therefore, the motion of the defendant, One Valley Bank of Oak Hill, Inc., for summary judgment is DENIED.

■ The parties to this case having represented on the record at a May 3, 1989 hearing that no matters are in issue as to the facts which were stipulated and that

the adversary proceeding could be resolved by deciding the summary judgment motion of the defendant, this Court finds, for the reasons stated above, that the defendant's lien is void as to the Trustee, Raymond G. Dodson, and the claim of the defendant, One Valley Bank of Oak Hill, Inc., is to be treated as a general unsecured claim by the Trustee.

It is so ORDERED.