**In re Eric L. ONYAN, Debtor.**

**Bankruptcy No. 92–01782.**

United States Bankruptcy Court, N.D. New York.

Dec. 10, 1993.

Elizabeth Buenger Hughes, Deansboro, NY, for debtor.

Rodney A. Richards, Binghamton, NY, for Barry W. Hale.

Mark W. Swimelar, Syracuse, NY, Chapter 13 Trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The instant contested matter is before the Court by way of a motion filed by Eric L. Onyan ("Debtor") seeking to avoid a judicial lien held by creditor Barry Hale ("Hale") pursuant to § 522(f) of the United States Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). Also before the Court is Hale's

objection to the confirmation of the Debtor's proposed Chapter 13 plan, as amended.[1]

The Court conducted an evidentiary hearing and heard oral argument on October 4, 1993, in Utica, New York. Reserving its determination, the Court submitted both matters for decision on the same day as the hearing.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. § 1334(b), 157(a), 157(b)(1), 157(b)(2)(A), (K) and (L).

### FACTS

On June 6, 1992, the Debtor filed a voluntary petition under Chapter 13 of the Code. Debtor's Schedule A lists a one-half undivided interest in real property described as a mobile home and barn on approximately 1.7 acres in Erieville, New York. The listed value of the property was $21,000. Pursuant to Schedule C, the Debtor claims $10,000 of his one-half undivided interest in the real property as exempt under § 5206 of the New York Civil Practice Law and Rules ("NYCPLR"). Amended Schedule D lists a $4,500 debt to Hale secured by a "mobile home". Amended Schedule F again lists Hale, this time as an unsecured creditor for the sum of $12,516, the consideration being designated as "building services and related goods and supplies; mobile home".

The Debtor and Tamara were married in November 1988. At the hearing, the Debtor testified that the couple received the lot of land upon which the mobile home was later installed as a wedding gift from his mother. Further, that Hale, Tamara's father, acquired and installed the mobile home for them, and made certain improvements to the realty to provide the home with, among other things, running water, drains, and electricity. It appears that the couple moved into the home during the summer of 1989, *see* Debtor affidavit at p. 2, where they resided until they subsequently separated. The Debtor testified that he still resides there.

The Debtor also testified that he did not execute a note or mortgage covering the cost of the mobile home or the various improvements made to the realty by Hale. On cross-examination, however, the Debtor asserted, without dispute, that he made 15 payments to Hale totaling approximately $3,600. The Debtor contends that pursuant to a verbal agreement between himself, Tamara and Hale, these payments were to be applied solely to the $4,500 purchase price of the mobile home unit. The Debtor testified that he believed that the site improvements and installation of the home had been provided without cost as a wedding gift from Hale.

Through his counsel, Hale indicated that on or about April 7, 1992, after the couple separated, he obtained a judgment against the Debtor in the Supreme Court of the State of New York, County of Chenango, in the approximate amount of $17,016. Hale further indicated that the judgment was issued after a trial on the merits, and that the Debtor did appear in that proceeding.

At the hearing the Debtor stipulated to the entry of Exhibit 2 by Hale. Exhibit 2, was previously received into evidence in the state court trial and details the costs which were incurred in acquiring and installing the mobile home on the Debtor's lot. In pertinent part, Exhibit 2 reveals the following expenditures:

| | |
|---|---:|
| 1971 Ritz Craft mobile home | $ 4,500 |
| driveway work | 1,600 |
| digging well | 1,608 |
| transporting mobile home | 420 |
| additional digging | 120 |
| gravel | 198 |
| electric | 400 |
| windows for addition | 104 |
| lumber for addition | 1,000 |
| extend power line | 1,208 |
| service and hook up | 532 |
| water pump and materials | 415 |
| septic system | 4,134 |
| | $16,239 |

On July 17, 1992, the Debtor filed a motion pursuant to Code § 522(f) seeking to avoid

---

1. An additional objection was filed by the Debtor's estranged wife Tamara Onyan ("Tamara"). However, in light of a letter to the Court dated September 22, 1993 from the law firm retained by her stating that it no longer represented her in the matter, and given the fact that she did not appear at the hearing, the Court will consider such objection as having been withdrawn.

the judgment lien held by Hale to the extent it impairs his homestead exemption under NYCPLR § 5206. The Debtor's amended Chapter 13 plan, filed on November 5, 1992, proposes payments to Hale through the Chapter 13 Trustee amounting to 100% of the Hale secured claim, and 17% of all proven unsecured claims. Hale filed objections both to the avoidance of his lien and to the confirmation of the Debtor's proposed plan.

### ARGUMENTS

Acknowledging that NYCPLR § 5206 excepts from its application money judgments recovered wholly for the purchase price of the property sought to be claimed as exempt, the Debtor posits that the purchase price of a mobile home pertains only to the mobile home structure and does not include any improvements made to the land upon which it is installed. Based on this, the Debtor asserts that the amount of the Hale judgment exceeding the $4,500 purchase price of the mobile home structure impairs his homestead exemption and may be avoided pursuant to Code § 522(f). The Debtor contends that the avoided portion of the judgment becomes a general unsecured debt. Additionally, the Debtor asserts that Hale failed to protect his interests since he did not require the execution of a mortgage nor did he file a mechanic's lien against the property.

Positing that his proposed plan properly treats the avoided portion of Hale's claim as an unsecured claim, the Debtor contends that the plan should be confirmed.

Hale argues that his judgment is excepted from the reach of NYCPLR § 5206 since it was recovered for the purchase price of the mobile home and all of the costs associated with its installation including those for improvements to the real property which were necessary to make the mobile home habitable as a dwelling. Noting the absence of case law construing the term "purchase price" under NYCPLR § 5206, Hale draws an analogy to Article 10–A of the New York Personal Property Law which defines the term as "the total price paid or to be paid for the consumer goods or services, including all interest and service charges." See Article 10–A § 426.

Finally, Hale objects to the confirmation of the Debtor's proposed Chapter 13 plan, presumably since the plan fails to pay him the full amount of his secured claim, and does not provide for the retention of his lien. See Code § 1325(a)(5)(B).

### DISCUSSION

In the matter sub judice the Court is called upon to resolve a question of first impression concerning application of the New York State homestead exemption provided by NYCPLR § 5206. To wit, whether the "purchase price" of a mobile home which is installed on real property owned by the debtor refers only to the price paid for the mobile home structure itself or whether the purchase price also includes costs necessary for transportation and installation, as well as the cost of the site improvements which are essential to making the mobile home habitable as a primary residence.

This question is relevant to the instant controversy since the Debtor seeks to invoke Code § 522(f) to avoid the judicial lien held by Hale. Code § 522(f) provides for the avoidance of a judicial lien to the extent that it impairs an exemption that the debtor would be entitled to in the absence of the lien. See In re Finn, 151 B.R. 25, 26 (Bankr. N.D.N.Y.1992) (citing Owen v. Owen, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991)). The Debtor posits that the Hale lien impairs his homestead exemption in the mobile home.

■ Initially, the Court notes that contrary to the position asserted by Hale, Code § 522(f) is applicable in Chapter 13. In re Blake, 38 B.R. 604 (Bankr.E.D.N.Y.1984); In re Schroff, 94 B.R. 279, 283 (Bankr.E.D.N.Y. 1988); In re Wisner, 77 B.R. 395 (Bankr. N.D.N.Y.1987).

The exemptions to which the Debtor may be entitled are provided in § 282 of the New York State Debtor and Creditor Law ("NYD & CL"), see In re Flatt, 160 B.R. 497 (Bankr. N.D.N.Y.1993), since New York has elected to "opt out" of the federal exemption scheme pursuant to Code § 522(b)(1). See In re Nudo, 147 B.R. 68, 70 (Bankr.N.D.N.Y.1992). NYD & CL § 282 specifically incorporates

the homestead exemption provided in NYCPLR § 5206. *Id.*

In relevant part NYCPLR § 5206 provides as follows:

(a) Property of one of the following types, not exceeding ten thousand dollars in value above liens and encumbrances owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment, *unless the judgment was recovered wholly for the purchase thereof:*

(1) a lot of land with a dwelling thereon, [or]

\* \* \* \* \* \*

(4) a mobile home.

*Id.* (emphasis added).

■ Thus, up to ten thousand dollars of the equity in one of the listed types of property may be claimed as exempt by a judgment debtor. *Id. c.f. John T. Mather Mem. Hosp. v. Pearl*, 723 F.2d 193 (2d Cir.1983) (married couples filing a joint bankruptcy petition may aggregate the exemption amount to claim up to $20,000 of equity as exempt). However, the homestead exemption may not be employed to defeat the claim of a creditor foreclosing a first or second mortgage on the property, *see Wyoming County Bank & Trust Co. v. Kiley*, 75 A.D.2d 477, 430 N.Y.S.2d 900 (4th Dep't 1980), or a mechanic's lien. *See Robert S. Moore, Inc. v. Whittaker*, 142 Misc.2d 708, 538 N.Y.S.2d 415 (Co.Ct.1989). Additionally, pursuant to the plain language of the statute, the exemption does not apply where the money judgment was recovered wholly for the "purchase price" of the property for which the exemption is sought to be claimed. NYCPLR § 5206.

While the statute seems clear on its face, it is in the context of the instant controversy that a latent ambiguity becomes apparent. Is the purchase price of a mobile home merely the cost of the mobile home structure itself? Perhaps this question can be answered in the affirmative where the mobile home is purchased and installed on rented or leased property in a trailer park setting where conveniences such as running water, sewerage and electricity, may be made available to the lessee as a part of the leasehold. But what of the situation, as in the instant case, where the mobile home is purchased for installation on real property owned by the purchaser which has not already been improved with items such as a well, a septic system and electric utility service. As will be discussed, the Court concludes that it is under circumstances such as these that the purchase price of the mobile home must be viewed as including the cost of improvements to the realty which are essential to making the home fully habitable.

■ This issue is not addressed by NYCPLR § 5206 or the decisional law construing same. It is well established, however, that mobile homes are considered "personal property" constituting "consumer goods" for purposes of Article 9 of the Uniform Commercial Code. *In re Brown*, 45 B.R. 766, 768 (Bankr.N.D.N.Y.1985); *In the Matter of Fink*, 4 B.R. 741 (Bankr.W.D.N.Y. 1980); *In re Knapp*, 575 F.2d 341, 343 n. 3 (2d Cir.1978); *accord In re Johnson*, 105 B.R. 352, 354 (Bankr.S.D.W.Va.1989), *aff'd*, 4 F.3d 985 (4th Cir.1993) (table) (disposition in district court not published). Despite being generally characterized as personal property, however, a mobile home may cease being personalty upon its annexation to real property, becoming a "fixture" thereto. *See Matter of Fink, supra,* 4 B.R. 741; *In re Brown, supra,* 45 B.R. at 769–70 (dictum). Once annexed to real property, a fixture becomes a part of the realty. *See* 59 N.Y.Jur.2d, *Fixtures* § 1; NYUCC § 9–313(1)(a).

■ While the test for determining whether an article has become a fixture has been stated in numerous ways, *see Matter of Fink, supra,* 4 B.R. at 743–44, its requisites are as follows: (1) annexation to the realty; (2) adaptability of the affixed article to the use of the freehold, and (3) the intention of the party making the annexation is to make the article a permanent accession to the freehold. *Id.* at 744; 59 N.Y.Jur.2d, *Fixtures* § 2. Applying these factors, the bankruptcy court in *Matter of Fink, supra,* concluded that a mobile home had become a fixture after finding, *inter alia,* that it was installed on land which the debtor had contracted to purchase, that

as a part of the installation the debtor had added a crawl space, installed a septic system, and ran water and electricity into the home thereby making it ready for permanent occupancy. *Id.* In that case the debtor was found to have resided in the mobile home since its installation. *Id.*

In the instant case, the Court similarly concludes that the mobile home was installed as a permanent accession to the Debtor's real property. Here, the Debtor testified that despite having lived in the home for a period of up to three weeks without running water, indoor plumbing or electricity, he admitted that it was never his intention to reside there for any significant period of time without these "modern conveniences", and that his short stay there under these circumstances was merely a temporary expedient until the necessary installations and hook-ups could be provided. As admitted by the Debtor under cross-examination, these items included the digging of a well, the installation of a water pump and a septic system, and the hook up of electricity. Viewed in its proper context, what the Debtor purchased from Hale was a mobile home which was to be suitable for occupancy as a principal residence once installed on his own property. Indeed, the Debtor testified as to residing there since its completion. Accordingly, the purchase price must be viewed as including not only the cost of the mobile home structure itself, but of all the improvements to the realty necessary to render it capable of serving its intended purpose as a principal residence.

■ Support for this conclusion is provided by the statute itself, since if the New York State legislature had intended for the exemption to apply merely to a mobile home structure as personal property, then presumably it would have included mobile homes within those categories of personalty exempt from the satisfaction of money judgements provided under NYCPLR § 5205. Rather, the mobile home exemption is incorporated into the real property exemptions provided by NYCPLR § 5206 so as to protect mobile home owners and their families from the seizure of their homes to the satisfaction of money judgments. *See generally In re Ellerstein,* 105 B.R. 214, 216 (Bankr.W.D.N.Y. 1989). To be meaningful, therefore, the exemption must be read as being applicable to a mobile home in its completed form as a residential dwelling unit under circumstances where it is affixed to real property owned by the judgment debtor, and not merely as an item of personalty in the abstract as the Debtor suggests.

■ Applying the foregoing principles to the instant case, the Court concludes that the Hale judgment was recovered wholly for the purchase price of the mobile home, which necessarily included the costs of the improvements to the real property essential to making the home habitable as a principal residence. Pursuant to the express terms of NYCPLR § 5206, the homestead exemption is not applicable here. Therefore, since the judgment does not impair an exemption to which the Debtor is entitled in the mobile home,[2] the Hale judgment is not avoidable in the context of the instant contested matter. Contrary to the Debtor's assertions, the fact that Hale did not have a mortgage or file a mechanic's lien against the property does not change this result since the judgment lien was obtained to secure a debt for the "purchase price" of the mobile home.

Having so determined, the Debtor's proposed Chapter 13 plan cannot be confirmed since it does not provide for the retention of the Hale lien, as prescribed by Code § 1325(a)(5)(B), nor does it provide for the distribution of property under the plan in an amount equal to the allowed amount of Hale's secured claim, to wit: $17,016 less the $3,600 previously paid by the Debtor.[3] *Id.*

---

**2.** This is to be distinguished from the Debtor's right to claim the homestead exemption at least to the extent of the value of the real property itself for which the Debtor already held fee title. The Court makes no determination in this regard however, since neither party provided an appraisal of just the realty without the improvements discussed herein.

**3.** While Hale's Exhibit 2 totals $16,239, Hale contends that the judgment entered in the Supreme Court, Chenango County, was the sum of $17,016 and the Debtor's amended Schedules D and F reflect a secured and unsecured claim due to Hale in the total sum of $17,016.

Accordingly, the proposed plan is denied confirmation.

Based on the foregoing conclusion, it is hereby

**ORDERED** that the Debtor's motion pursuant to Code § 522(f) to avoid the judicial lien held by Hale is denied, and it is further

**ORDERED** that the Debtor's proposed Chapter 13 plan is denied confirmation for failing to satisfy the requirements of Code § 1325(a)(5)(B).