NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No.   EC-13-1346-KuJuTa |
| | ) |
| SYED S. CHOWDAURY, | ) Bk. No.   11-38996 |
| | ) |
| Debtor. | ) Adv. No.   11-02724 |
| _____ | ) |
| NITIN SHAH, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **MEMORANDUM**[*] |
| | ) |
| SYED S. CHOWDAURY, | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Argued and Submitted on May 15, 2014
at Sacramento, California

Filed – June 30, 2014

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Robert S. Bardwil, Bankruptcy Judge, Presiding

_____

Appearances:     William Steven Shumway argued for appellant Nitin
                 Shah; Aaron Christopher Koenig argued for appellee
                 Syed S. Chowdaury.

_____

Before: KURTZ, JURY and TAYLOR, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Pursuant to 11 U.S.C. § 523(a)(2)(A),[1] Creditor Nitin Shah commenced nondischargeability litigation against debtor Syed S. Chowdaury alleging that Chowdaury fraudulently induced Shah to enter into an extension, renewal or refinancing of credit.

After trial, the bankruptcy court ruled against Shah. The court found that Chowdaury did not make any misrepresentation or false promise at or before the time Shah lent money to Chowdaury, nor did Chowdaury intend to deceive Shah at the time Shah lent the money. The bankruptcy court also ruled against Shah on the alternate basis that Shah had failed to demonstrate justifiable reliance.

Because Shah presented no evidence that Chowdaury's conduct proximately caused Shah to incur any damages, We AFFIRM.

**FACTS**

Chowdaury owned and operated two hotel properties in Lake Tahoe, California, known as the Monaco Hotel and the Lone Pine Inn.[2] In 2003, Chowdaury was experiencing financial difficulties and needed funds to pay back taxes and to make repairs to his Lake Tahoe properties. Chowdaury approached his local bank, which declined to lend him the money, but his banker put him in touch with Shah, who agreed to loan money to Chowdaury. Between roughly March and October of 2003, Shah made a series of advances to Chowdaury, which totaled somewhere between $219,000 and

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2]Chowdaury also is known by the name of Syed Ali. For ease of reference, he is always referred to herein as Chowdaury.

$257,000. Shah made these 2003 advances without any formal loan documentation, nor was there any clear agreement or understanding on how or when Chowdaury would repay the loan.

In April 2004, Chowdaury still needed additional money. According to Shah, he refused to lend Chowdaury any additional money unless Chowdaury signed a promissory note covering the 2003 advances. The note Chowdaury signed, dated April 8, 2004, provided for 10% interest and a principal amount of $205,000. However, the note also provided that the principal amount would be "substantiated by cancelled check copies & other papers." Straight Note (April 8, 2004) at p. 1.

The note also contained three potentially-conflicting provisions regarding repayment. The printed form of the note stated that the note was payable on demand. But an interlineation on the face of the note stated: "Note will be paid on Refinance of Monaco Hotel & Lone Pine Inn Refinance (Lake Tahoe, Ca)," and a second intelineation stated: "Monaco Hotel will fund the Note upon Refinance." Id.

Apparently, Shah never loaned any additional money to Chowdaury after Chowdaury signed the note. As for Chowdaury, before signing the note, he made payments on account of the 2003 advances totaling $14,000. However, after signing the note, Chowdaury never made any further payments to Shah.

Chowdaury subsequently refinanced his Lake Tahoe properties, but he did not repay Shah. In 2009, after Shah learned of the refinancing transactions, he filed a lawsuit against Chowdaury in the Alameda County Superior Court. In 2011, while the state court lawsuit was pending, Chowdaury commenced his chapter 7

3

bankruptcy case, and Shah commenced an adversary proceeding seeking to except Chowdaury's indebtedness from discharge under § 523(a)(2)(A).[3]

Shah's operative pleading, his second amended complaint, focused on the 2003 advances. Shah alleged that, with the intent to fraudulently induce Shah to make the 2003 advances, Chowdaury falsely represented his intent regarding the use of the loan proceeds and regarding repayment of the loan. Shah's statement of facts in his unilateral pretrial statement was consistent with the allegations set forth in his second amended complaint. However, during trial, Shah's focus shifted from the 2003 advances to the 2004 note. According to Shah, at the time Chowdaury executed the 2004 note, Chowdaury falsely represented that he would repay the 2003 advances when he refinanced his Lake Tahoe properties.

By the end of the trial, Shah's legal theory of recovery had fully evolved to focus exclusively on the repayment misrepresentation allegedly made at the time the 2004 note was signed, as reflected in counsel's closing argument. Indeed, Shah's counsel explicitly confirmed that the actionable misrepresentation occurred at the time the 2004 note was signed and not at the time of the 2003 advances:

> THE COURT: Does your client assert that Mr. Chowdaury made the representation that your client would be repaid upon the refinance of the Tahoe properties at any time before the note was signed, and that was April

---

[3]The complaint ambiguously alleged that the debt was nondischargeable under § 523(a), but Shah clarified at the time of trial that his nondischargeability claim was based on § 523(a)(2)(A).

4

of 2004?

MR. SHUMWAY: No. This is the transaction. This is the event. That the renegotiation of the debt, the obligation of 13 the debt –

THE COURT: At this point in time.

MR. SHUMWAY: -- created this situation at this point in time and this was how we were going to get repaid.

Tr. Trans. (May 13, 2013) at 93:7-16.

Shah's trial testimony and Chowdaury's trial testimony differed considerably regarding the nature and purpose of the 2004 note. Whereas Shah attempted to characterize the 2004 note as a refinancing of the 2003 advances, Chowdaury claimed that the 2004 note was meant to address new advances that Shah had agreed to make but never made.

The bankruptcy court orally announced its findings of fact and conclusions of law at the conclusion of the trial. The court stated that it found both Shah and Chowdaury generally credible. The court acknowledged inconsistencies in their respective accounts of their business transactions, but it attributed these inconsistencies to the very loose and informal manner in which they transacted business. With respect to the purpose and nature of the 2004 note, the court nonetheless concluded that Shah's explanation of the note was more credible than Chowdaury's.

At the same time, the court rejected Shah's characterization of the 2004 note as a refinancing of the 2003 advances. Instead, the court determined that the 2004 note was merely a written memorialization of Chowdaury's indebtedness for the 2003

advances.[4]

In addition, the bankruptcy court found that, prior to the execution of the 2004 note, Chowdaury never made any representation or promise, false or otherwise, regarding how the 2003 advances would be repaid. The court further found that Chowdaury did not intend to deceive Shah at the time Shah made the 2003 advances.

According to the bankruptcy court, Shah also failed to demonstrate justifiable reliance. The court based this finding on the following facts: (1) the loose and informal manner in which Shah advanced funds to Chowdaury; (2) Shah's awareness of Chowdaury's financial problems in general and more specifically Chowdaury's problems operating the Lake Tahoe properties; (3) Shah's knowledge that Chowdaury was unable to obtain a loan from a conventional lender or other third parties; and (4) Shah's failure to require Chowdaury to produce any financial information before Shah made the 2003 advances.

On June 6, 2013, the bankruptcy court entered judgment against Shah and in favor of Chowdaury on Shah's nondischargeability claim. Shah timely filed his notice of appeal on June 19, 2013.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C.

---

[4]Shah's complaint allegations and his trial testimony generally are consistent with the bankruptcy court's determination that the note was a mere memorialization and not a refinancing. In any event, this determination is not critical to our analysis and resolution of this appeal.

§ 158.

Did the bankruptcy court commit reversible error when it ruled against Shah on his § 523(a)(2)(A) claim?

**STANDARDS OF REVIEW**

In appeals from exception to discharge actions, we review the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009), aff'd, 407 Fed.Appx. 176 (9th Cir. 2010).

A fact finding is not clearly erroneous unless it is "illogical, implausible, or without support in the record." Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

We may affirm on any ground supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

**DISCUSSION**

In order to prove that its claim should be excepted from discharge under § 523(a)(2)(A), a creditor must establish that it was induced to provide "money, property or services" or to enter into "an extension, renewal or refinancing of credit" by means of "false pretenses, a false representation, or actual fraud." § 523(a)(2)(A); see also Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010). In turn, the creditor can establish fraud by demonstrating: (1) that the debtor made misrepresentations, (2) that the debtor knew the misrepresentations were false at the time they were made, (3) that the debtor made them with the intent to deceive the creditor, (4) that the creditor justifiably relied on the

7

misrepresentations, and (5) that, as a proximate cause of the creditor's reliance, the creditor was harmed.  Id.; In re Weinberg, 410 B.R. at 35.

Shah has not argued, either during trial or on appeal, that Chowdaury made any actionable misrepresentations at the time Shah made the 2003 advances.  Instead, Shah argues that the debt should be excepted from discharge because Chowdaury made a false promise – that he would repay the 2003 advances upon refinance of the Lake Tahoe properties – at the time he executed the 2004 note.[5]

Shah's argument is fatally flawed.  The record establishes (and the bankruptcy court in essence found) that Chowdaury did not induce Shah to do anything to his detriment on account of the 2004 promise to repay.  Shah claims that, because Chowdaury executed the note and promised therein to repay the debt upon the refinance of the Lake Tahoe properties, Shah agreed to forbear from attempting to collect on the debt until Chowdaury refinanced the Lake Tahoe properties.  There are three problems with this claim.  First, the record does not support it.  On its face, the note Chowdaury executed states that it is payable "on demand."  While the note also states that it will be repaid upon refinance of the Lake Tahoe properties, it is far from clear that the note prohibited Shah from immediately demanding repayment or from initiating a collection action if the debt was not repaid upon

---

[5]A false promise is a type of misrepresentation that can support an exception to discharge under § 523(a)(2)(A), provided that all of the § 523(a)(2)(A) elements are established.  See McCrary v. Barrack (In re Barrack), 217 B.R. 598, 606-07 (9th Cir. BAP 1998).

8

demand. Nor is there anything else in the record indicating that, until the Lake Tahoe properties were refinanced, Shah was prohibited from demanding payment of the debt or from initiating collection activities.

Second, even if Shah did affirmatively agree to forbear from collecting on the debt pending the refinance of the Lake Tahoe properties, the record indicates that Chowdaury neither induced nor solicited this agreement to forbear. Rather, based on the evidence adduced at trial, Shah unilaterally decided to forbear. Presumably, he agreed to forbear because he realized that this was his only realistic hope of collecting on the debt. A creditor's unilateral decision to forbear is not actionable under § 523(a)(2)(A) unless the debtor induced that forbearance by making a false representation. See FO-Farmer's Outlet, Inc. V. Daniell (In re Daniell), 2013 WL 5933657, at **9-10 (9th Cir. BAP 2013).

And third, even if Chowdaury did induce Shah to forbear from collecting on the debt, Shah presented no evidence that Chowdaury's promise to repay proximately caused Shah to incur damages. In order to prevail on a § 523(a)(2)(A) claim based on the creditor's forbearance, the creditor must prove, among other things, that at the time of the forbearance, "it had valuable collection remedies." Cho-Hung Bank v. Kim (In re Kim), 163 B.R. 157, 161 (9th Cir. BAP 1994), aff'd and adopted, 62 F.3d 1511 (9th Cir. 1995); see also Stevens v. Nw. Nat'l Ins. Co. (In re Siriani), 967 F.2d 302, 305 (9th Cir. 1992)(same holding in the context of § 523(a)(2)(B)). The creditor also must prove that "those remedies lost value" during the time of forebearance.

9

*In re Kim*, 163 B.R. at 161. In short, the creditor proves proximate causation and damages only to the extent it shows that its remedies lost value during the forbearance period. Id.

Simply put, even if we were to accept Shah's claim that he was induced to forbear from collecting on Chowdaury's debt based on Chowdaury's allegedly false promise to repay the debt upon the refinancing of the Lake Tahoe properties, Shah still would lose this appeal because Shah presented no evidence at trial indicating that he had valuable collection remedies that he lost as a result of his forbearance.

Shah also cannot prevail on appeal because he did not adequately address in his opening appeal brief the bankruptcy court's alternate grounds for its judgment – its finding that Shah did not justifiably rely on Chowdaury's promise to repay. Shah's appeal brief devotes only one paragraph to the bankruptcy court's justifiable reliance finding. In that single paragraph, Shah marshals a handful of facts, some of which are not even in the record, which might have permitted the bankruptcy court to find justifiable reliance. But Shah has not demonstrated on appeal that no reasonable factfinder could have found an absence of justifiable reliance on the record presented. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985).

Put another way, Shah has failed to demonstrate that the bankruptcy court's finding regarding justifiable reliance was "illogical, implausible, or without support in the record." *In re Retz*, 606 F.3d at 1196. Accordingly, we cannot say that

10

the court's finding of no justifiable reliance was clearly erroneous.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's judgment.